## INSURANCE CO. OF NORTH AMERICA v. CRUDE OIL CONTRACTING CO. et al.

### Civ. No. 135.

District Court, N. D. Oklahoma.
March 20, 1940.

F. A. Rittenhouse and Walter D. Hanson, both of Oklahoma City, Okl., for plaintiff.

John E. Curran and Morris L. Bradford, both of Tulsa, Okl., and A. M. Hoenny, of St. Louis, Mo., for defendants.

FRANKLIN E. KENNAMER, District Judge.

The Gulf Refining Company maintained a tank farm near Dublin, Indiana, for the storage of crude petroleum. By written contract it sold defendant Crude Oil Contracting Company an estimated quantity of 125,000 barrels of "tank bottoms" or "BS", which is the sediment deposited in the tanks from their use for oil storage. There was a provision in the contract that the crude oil contained in the tanks should be removed and then a joint gauge made of the tank bottoms to determine the quantity of the sediment to be taken by Crude Oil "and that upon completion of the joint gauge of each tank, the title to the tank bottoms or BS shall pass to Crude." Also, under the contract, said defendant agreed to clean the tanks after the removal of the sediment and to return them to the Gulf "in as good condition as they were at the time Crude started to use them—Gulf to be the judge of such condition." The contract further provided: "Crude further agrees to indemnify and hold Gulf harmless against all claims, losses, or damages, regardless of the nature thereof, arising out of its operations in treating and removing tank bottoms, commonly called BS, and residue or sludge, and whether said liability arises out of contract or in tort, and to include claims of every kind and character * * *". During the operations under this contract one of the tanks and its content of sediment was destroyed by an explosion. By this action, plaintiff under subrogation and assignment from the Gulf Refining Company seeks to recover for the value of the tank and contents so destroyed. The National Surety Corporation is also joined as a party defendant as surety of defendant Crude Oil Contracting Company for the performance of the contract. By its complaint, plaintiff asserts liability against the defendants both in contract and in tort.

It appears that operations under the contract were commenced in May, 1938, and the "bottoms" were removed from seven of the tanks by defendant Crude Oil prior to August 18, 1938, without mishap. On the morning of that day, tank No. 45 was gauged as provided by the contract and the tank turned over to Crude Oil for removal of the purchased sediment. This tank was approximately 120 feet in diameter and was surrounded, as were the other tanks, by an earthen fire wall approximately 6 feet in height and a diameter of 340 feet. Following the delivery of the tank to Crude Oil it immediately commenced operations for the removal of the sediment and the cleaning of the tank. A break was made in the northeast section of the fire wall sufficiently large to permit cars and trucks to enter its inside area. The door sheet on the tank was opened and the employees of Crude Oil began the removal of the sediment to treating tanks. About 9 o'clock P. M. of the same day, Crude Oil suspended this operation by stopping the pumps because considerable quantities of gas emanating from the tank had accumulated around the tank and inside the fire wall. The still and humid weather conditions caused the escaping gas to remain close to the ground instead of dissipating in the air. About midnight one Hicks, an employee of Crude Oil, came to the tank farm to begin his work shift. He arrived in a car driven by a friend named Kinnaman, the men being accompanied by some young ladies with whom they had spent the evening. Kinnaman stopped the car at distance estimated at 50 to 75 feet from the opening of the fire wall around tank 45, and Hicks got out to change his clothes preparatory to going to work. About that time one Zook, another employee of Crude Oil, arrived to also go to work, and started to drive inside the fire wall, but was stopped by one

**118**

Money who was working for Crude Oil at the tank on the previous shift. At approximately 12:05 A. M. of August 19th, Hicks, having changed his clothes and placed his changed clothes in Kinnaman's car and the young ladies being inside the car and Kinnaman having remarked that he must leave and take the girls home, an explosion occurred which resulted in a fire that destroyed the tank. The area of the fire was inside the fire wall except that a portion of the area extended out through the break in the fire wall to the northeast and included the Kinnaman car, the cushions of which caught fire. The fire area did not extend to the west outside the fire wall. The exact origin of the explosion was not testified to by any witness. Kinnaman testified that he did not remember whether, as he prepared to leave, he had stepped on the starter of his car or turned on its switch. Further details of the evidence will be discussed hereinafter in comment upon the various controverted propositions involved. It may be here remarked that the amount of the judgment to be rendered, in the event the defendants are held liable, is not disputed.

Plaintiff contends that since Crude Oil contracted to clean the tanks and return same to Gulf in as good condition as when delivered to Crude Oil, the defendants are clearly liable ex contractu for the destruction of the tank by fire while the tank was under the control and in the possession of Crude Oil; and, also that the evidence sufficiently established negligence on the part of Crude Oil to entitle the plaintiff to recover in tort. On the other hand, defendants assert that the obligation of Crude Oil under the contract was not that of an insurer, but merely to indemnify Gulf as to any damage caused by the negligence on the part of Crude Oil in the absence of negligence of the Gulf; that plaintiff failed to establish that Crude Oil was negligent in any manner, but that the evidence shows primary negligence on the part of Gulf; and, further, assuming that the evidence established negligence on the part of Crude Oil, nevertheless, plaintiff, standing in the shoes of Gulf, is barred from recovery by reason of the negligence of the latter.

Viewing the action as ex contractu, it is difficult to agree with the position of defendants. The case of Maloney Tank Mfg. Co. v. Mid-Continent Petroleum Corporation, 10 Cir., 49 F.2d 146, 148, appears decisive. In that case, the court said: "The petition alleged an oral agreement with defendant to remove the tanks in question, and that, while defendant was engaged in such work of removal, the tanks were destroyed by a fire caused by the negligence of the defendant, its agents, servants, and employees."

The defendant treated the case as sounding wholly in tort, and the court stated that the petition did leave room for doubt as to what wrong was sought to be redressed, but concluded that the action could be considered as in contract, remarking: "Considered as an action on the contract, all difficulties disappear. The appellant undertook to dismantle the tanks with reasonable skill and in a workmanlike manner; it did not do so. So considered, it makes no difference whether the appellant employed the workmen directly, or employed the sales corporation to employ them. The work the appellant contracted to do was not done as agreed."

In the instant case, there was a definite agreement on the part of Crude Oil to remove the sediment and return the tank in good condition as received. Certainly, there was a breach of the contract when this was not done. Of course, if the explosion had been occasioned by some act of negligence on the part of the Gulf, the plaintiff could not recover. The cases cited by defendants to this effect, such as North American Ry. Construction Company v. Cincinnati Traction Company, 7 Cir., 172 F. 214, cannot here be of aid to defendants.

The fact that the evidence disclosed that the crude petroleum contained in the tanks was mixed with casing-head gasoline on a basis of 97 per cent crude oil and 3 per cent casing-head gasoline of approximately 20-pound vapor pressure, which imparted to the sediment greater explosive qualities than if only crude oil had been stored in the tank, does not relieve the defendants. The Crude Oil had taken samples from the tanks before it entered into the contract. It had removed the sediment purchased from seven tanks on the farm prior to its operations on tank 45. It had become cognizant of the highly gaseous quality of the contents of the tanks in its work on the first tank cleaned. With this knowledge, Crude Oil proceeded with its work under the contract without making any complaint or objection. In this situation it should not be allowed to contend that it is not liable for the fire loss on account of unusual gaseous conditions of which the Gulf had given it no information.

If, however, it could be said that Gulf was negligent in storing the mixture of crude oil and casing-head gasoline, this was not the proximate cause of the explosion, but merely furnished a condition by which the explosion was made possible by the subsequent independent act of negligence on the part of Crude Oil in permitting the gas to escape and become ignited. Munroe, Adm'x v. Schoenfeld & Hunter Drilling Co., 178 Okl. 149, 61 P.2d 1045.

However, since liability of the defendants can be predicated upon breach of the contract, it is unnecessary to determine the tort liability, although it does appear that plaintiff may be entitled to recover thereon.

Judgment is rendered for plaintiff in the amount stipulated as the value of the loss.