## CRUDE OIL CONTRACTING CO. et al. v. INSURANCE CO. OF NORTH AMERICA.

### No. 2152.

Circuit Court of Appeals, Tenth Circuit.

March 18, 1941.

John E. Curran, of Tulsa, Okl. (Morris L. Bradford, of Tulsa, Okl., and A. M. Hoenny, of St. Louis, Mo., on the brief), for appellants.

Walter D. Hanson, of Oklahoma City, Okl. (F. A. Rittenhouse, of Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

Gulf Refining Company, a corporation,[1] owns a pipeline through which it transports petroleum products for storage at its tank farm in East Henry County, Indiana. A basic substance commonly known as B. S., consisting of the impurities in crude oil, accumulates in the bottom of storage tanks and it is necessary at times that this sediment be removed.

April 8, 1938, Gulf entered into a contract with Crude Oil Contracting Company, a corporation,[2] for the removal of the

---

[1] Herein referred to as Gulf.

[2] Herein referred to as Crude.

B.S. in eleven of its tanks on this farm. The contract provided that Gulf was to sell to Crude, for a stated consideration, approximately 125,983.76 barrels of tank bottoms in these eleven tanks. Crude was to remove the B.S., clean all the tanks, and remove all the inflammable material therefrom. The storage tanks were 117 feet in diameter and were surrounded by an earthen wall six feet high and 340 feet in diameter.

Gasoline in crude oil stored in tanks continues to vaporize. The gaseous vapors escape through a valve in the top of the tank and during normal conditions dissipate in the air, but when atmospheric conditions are unfavorable the escaping gas settles and spreads out along the ground. It is to prevent this and to retain the gas within the fire wall until it may escape into the air that the fire wall was constructed.

An opening sufficient in width to permit the entrance and exit of trucks and equipment used in its operations was made in the fire wall surrounding a tank when Crude went to work on it. It had completed its work on six of the tanks and was working on the seventh one when an explosion occurred, causing the death of two employees and resulting in the destruction of the tank by fire. Gulf carried insurance on these tanks with the Insurance Company of North America.[3] Plaintiff paid Gulf for the loss of this tank, took a subrogation agreement from it of its claim against Crude and the National Surety Company which had written the performance bond for Crude, and filed an action against them to recover the amount it had been compelled to pay Gulf. Judgment was for Plaintiff, from which this appeal is taken. The assignments of error may be summarized as follows: 1. Gulf was guilty of negligence which precluded recovery by it. 2. No negligence was established on the part of Crude. 3. No contractual liability was shown on the part of Crude requiring it to respond in damages.

■ One of the established and recognized methods of transporting gasoline for storage through pipelines is to intermingle it with crude oil. Gulf had employed this method for years. It had added three per cent casinghead gasoline to the crude that had been transported and stored in these tanks. Gulf did not inform Crude of the addition of this casinghead gasoline. Crude takes the position that the addition of this three per cent casinghead gasoline created a more dangerous substance than the ordinary B.S. and that Gulf should have informed Crude of this addition so it could have taken added precautions, and that failure on its part to do so was such negligence as bars recovery for the resultant loss. Assuming, without deciding, that Gulf was negligent in failing to inform Crude of the addition of the gasoline, does such negligence bar recovery? We think not. Before its failure to inform Crude of the addition of the gasoline would bar recovery, it must appear that such failure proximately contributed to the loss.

■ Under the contract, Gulf removed the contents of these tanks until the mixture showed ten per cent B.S. This would result in a removal of the greater portion of the gasoline. Also, the greater the amount of lighter and more volatile elements in the mixture, the more evaporation would result while the crude was stored in the tanks. So it may well be doubted whether the B.S. delivered to Crude contained an appreciably greater amount of gasoline than is found in ordinary crude. But, be that as it may, Crude had full knowledge of the dangers resulting from these tank bottoms under adverse atmospheric conditions. On a number of preceding occasions, the accumulation of gas became so noticeable that Crude considered it dangerous to proceed, and operations were suspended until atmospheric conditions improved and until the accumulated gas had dissipated. On the day of the explosion, atmospheric conditions were unfavorable to the dissipation of the gas. By evening it was so bad that it was thought to be unsafe to proceed, and about nine o'clock in the evening operations were suspended. Just prior to the time of the explosion, Zook, an employee of Crude, arrived in his car and started to drive through the opening in the fire wall into the enclosure. He was stopped and told not to drive in because it was so gaseous that an explosion might occur. He thereupon shut off his engine and let his car drift back down. From these facts it appears that Crude had full knowledge of the dangers resulting from this B.S. under adverse conditions, and especially on this

_____
[3] Herein referred to as **Plaintiff.**

particular occasion, and failure on the part of Gulf to reveal the addition of the gasoline resulted in no prejudice to it. If it can be said that Gulf was negligent, such negligence at most created a condition from which the injury became possible through the subsequent independent acts of Crude, acting with full knowledge of the hazards existing at the time, and was not the proximate cause of the loss. Munroe v. Schoenfeld & Hunter Drilling Co., 178 Okl. 149, 61 P.2d 1045; Jafek v. Public Service Co. of Oklahoma, 183 Okl. 32, 79 P.2d 813; City of Okmulgee v. Hemphill, 183 Okl. 450, 83 P.2d 189.

Crude contends that the evidence failed to establish negligence on its part. Around midnight, Edward W. Hicks, an employee of Crude, was brought to work by Robert Kinneman in his automobile. In the car with them were four women companions. They drove the car to within fifty to seventy-five feet of the opening in the fire wall, where they stopped. Immediately preceding the explosion, Kinneman had announced that it was time for him to leave and had entered his car when a terrific explosion occurred, with the resultant loss. Kinneman testified that he did not remember whether he had turned on his switch or stepped on the starter of his car. Crude seizes upon the statement in the court's opinion, D.C., 32 F.Supp. 116, that "the exact origin of the explosion was not testified to by any witness" to support its position that negligence was not established on its part. Its position seems to be that its negligence, if any, is predicated upon whether the spark that caused the explosion came from Kinneman's car.

While the evidence does not clearly establish the cause of the explosion, it may be fairly inferred from the attending circumstances that the explosion was occasioned by Kinneman's car. Although it is not clearly established that he had started his car, he had entered it and had announced his intention of leaving. At that point the explosion occurred. It is also significant that the explosion was confined to the area within the fire wall and to a space extending from the opening in the wall to Kinneman's car. The seat cushions of Kinneman's car were set afire and the passengers in the car were burned. Apparently the explosive area did not extend beyond Kinneman's car nor in any other direction than from his car to the opening in the fire wall.

The negligence of Crude is not, however, dependent upon whether Kinneman caused the explosion. Its negligence consisted in failing to exercise reasonable care to prevent the gas which it knew was accumulating in dangerous quantities from escaping. It had full knowledge of the dangerous conditions as they existed there at the time. It took no steps to guard against the hazards resulting therefrom. No warning signs were posted, no guards placed to prevent cars from entering the danger zone. No efforts were undertaken to confine the gas within the fire wall until atmospheric conditions would dissipate it. This was the negligence which imposed liability upon Crude.

But, aside from any question of negligence, it is nevertheless liable to Gulf for the resultant damage. In the contract, Crude agreed: "* * * to indemnify and hold Gulf harmless against all claims, losses or damages, regardless of the nature thereof, arising out of its operations in treating and removing tank bottoms, commonly called B.S., and residue or sludge and whether said liability arises out of contract or in tort, and to include claims of every kind and character and to procure and deliver to Gulf for its benefit performance bond protecting Gulf from any and all loss or damage in a company acceptable to Gulf in a sum not less than Ten Thousand Dollars ($10,000.00)."

This indemnity clause is couched in the broadest and most comprehensive terms. It is all-inclusive. In it Crude agrees to indemnify Gulf for all losses, regardless of the nature thereof and whether arising out of contract or in tort, resulting from its operations. Crude was engaged in its operations under the contract. It had completed its work on six of the tanks and was engaged in working on the seventh one. It had removed part of the fire wall on this tank; it had opened the tank at the bottom to permit the removal of the B.S., thereby accelerating the escape of gas therefrom, its employees were in and about the tank in the course of their employment. The loss resulted from its operation under the contract and it is liable therefor under the express terms of its agreement.

The judgment is affirmed.