HAROLD WINKLER and MARJORIE WINKLER, Respondents, v. MACON GAS COMPANY, INC., a Corporation, and PHILLIPS PETROLEUM COMPANY, a Corporation, Appellants, No. 41895—238 S. W. (2d) 386.

Division Two, March 12, 1951.

Motion for Rehearing or to Transfer to Banc Overruled, April 9, 1951.

1018

John R. Hughes, Roscoe Anderson and Cullen Coil for appellant Macon Gas Company, Inc.

*C. Kenneth Thies, Hunter, Chamier & Motley, Rayburn L. Foster, Walter L. Barnes* and *Rufus Y. Bandy, Jr.,* for appellant Phillips Petroleum Company.

1020

*Waldo Edwards, Paul D. Hess, Jr., Edwards & Hess, Edward M. Jayne, Edward R. Jayne* and *Roland Zeigel* for plaintiffs-respondents.

[388] BARRETT, C.—Marjorie Winkler rented a room "with kitchen privileges" from Mrs. Itschner. Mrs. Itschner's home, 111 Pace Street in Macon, was a one-story frame and stucco dwelling with a basement. Marjorie had lived there six or seven weeks when her husband was discharged from the army and returned to Macon on September 30th, 1947. On October 2, 1947 Harold and Marjorie had supper with Mrs. Itschner and her daughter, Mrs. Alvord, and about seven o'clock went to the basement to light the "side-arm" gas hot water heater for baths. Marjorie had lighted the water heater once before, probably on the previous Thursday, under Mrs. Alvord's direction and she was going to show Harold how to light it. They went down the basement steps, crossed through a small vegetable room, and approached the heater. Marjorie was to turn the gas on and Harold was to strike a match and light the burner. One of them opened the heater door and before Marjorie turned the gas on Harold lighted a match and immediately there was a terrific explosion and flames. For their resulting injuries and expenses they prosecuted this action

against the Macon Gas Company and Phillips Petroleum Company and a jury awarded them $19,750.00 as damages.

Initially there were several assignments of negligence; maintenance of defective gas mains, failure to inspect for leaking gas, failure to properly repair and many others, but, in the end, the plaintiffs' case was submitted upon the sole charge of negligent failure to sufficiently odorize the propane gas so that its escaped presence could be detected by the ordinary sense of smell. Upon this appeal the first question presented is whether the court erred in refusing to direct verdicts for the defendants for the reason that "Plaintiffs failed to adduce testimony of probative force and effect that the gas in question was not properly or sufficiently odorized." The argument is that the sole testimony upon which the plaintiffs may rely is their own testimony that they failed to smell an odor of any kind when they entered the basement. [389] One appellant says they did not testify that they "could not smell gas—only that they did not." The substance of the whole argument is that the plaintiffs' testimony that they did not smell anything in the basement is purely negative and, in the circumstances of this case, does not amount to substantial evidence of probative force from which the inference of negligent failure to properly odorize could be drawn.

There is no dispute between the parties as to the applicable general rules concerning negative evidence (2 Wigmore, Evidence, Sec. 664, p. 777) and, of course, if such evidence is admissible its weight is for the jury. Borrson v. M.-K.-T. R. Co., (Mo.) 161 S.W. (2) 227, 231. It is urged, in part, that there is no showing that the plaintiffs were particularly attentive (Connole v. Illinois Cent. R. Co., (Mo. App.) 21 S. W. (2) 907) and therefore their testimony does not necessarily present a conflict of evidence, or evidence of the fact sought to be established. Henze v. St. L., K. C. & N. Ry. Co., 71 Mo. 636, 638. But from the viewpoint favorable to the plaintiffs the inference of failure to sufficiently or properly odorize does not rest alone upon their mere negative testimony.

It was established by the defendants' evidence that escaped propane gas is dangerous and that it should be odorized as a safety measure. Their evidence tended to show that all the liquid petroleum used by the Macon Gas Company was odorized, "stenched," with Ethyl Mercaptan. They established, once the liquid petroleum was odorized, that the odor remained in the propane gas until the gas was burned or exploded. The odor was described as strong and disagreeable, fairly comparable to the odor of rotten cabbage, dead mice, garlic or skunk. One of the defendants' witnesses, a chemical engineer, said, "I would say that if a person of normal smelling ability was not able to detect an odor in the concentration you have mentioned (one pound of Ethyl Mercaptan to 10,000 gallons of liquid petroleum) that that material was not there."

Harold said that he had a normal sense of smell but did not smell the odor of gas when he and Marjorie attempted to light the heater. On cross-examination he said that he did not smell any odor, that of a musty basement, vegetables, or gas,—"I never noticed no odor at all." Marjorie was not familiar with the odor of any kind of gas but she said that she did not smell gas or any odors whatever. As to attentiveness and the use of one's faculties and intelligence (Boland v. Thompson, (Mo. App.) 142 S. W. (2) 790) or inattention or momentary forgetfulness of a known danger (65 C. J. S., Sec. 120, p. 722) there is probably a valid distinction in the railroad cases involving negative testimony that the bell or whistle of an oncoming train was not heard and a gas case, as here, where the purpose of the presence of the odorant is to attract the normally inattentive, certainly so when the absence of the odorant may be assumed if it is not detected by a person with a normal sense of smell. As the defendant established in another gas case, "the test of an odorant is whether or not it can be smelled, and that without the odorant you can't smell the gas." Doxstater v. Northwest Cities Gas Co., (Idaho) 154 P. (2) 498, 504. But in addition to the facts established by the defendants and in addition to the negative testimony of the plaintiffs there was one further circumstance that may not be ignored.

Within ten or fifteen minutes of the explosion an employee of the gas company was in the basement and within a half hour two gas company executives and others were present and "soap tests" for leaks were made. No one detected the odor of escaping gas. The defendants' evidence tended to show that there were no leaks. One witness, Mrs. Alvord's husband, said "I was standing about I judge about middle-ways of the basement, and I noticed some little blubbers on a valve and I just mentioned I said, 'There's some blubbers on the valve—.' I just mentioned, I said, 'Here are some blubbers on that valve,' and they didn't anybody say anything. I said, 'I believe there's some blubbers there on that valve,' and one of the men spoke up and says, 'Yes, it looks like there was,' * * *." The company [390] manager testified that there were no leaks or bubbles but he did remember that in the course of one "soap test" someone said "Is that a bubble?" or made some remark concerning bubbles.

Thus the inference of failure to sufficiently or properly odorize is not based alone upon the admissible negative testimony (Chapman v. Gas Service Co., 164 Kan. 359, 190 P. (2) 367) of the plaintiffs that they did not detect or smell the odor of gas. It is based upon that testimony and the additional circumstances that escaped odorized gas would be detected by any person with a normal sense of smell and the possible inference of a gas leak after the explosion with no one noticing the offensive odor. All these circumstances considered, and in the absence of a statutory duty to odorize the gas, there was evidence of probative force from which the jury could

draw the inference that the gas had not been sufficiently or properly odorized and the court did not err in refusing to direct verdicts for the defendants for that reason. Doxstater v. Northwest Cities Gas Co., supra; Willoughby v. Sinclair Oil & Gas Co., 89 F. Supp. 994; Houston Natural Gas Co. v. Kluck, (Tex.) 154, S. W. (2) 504.

About five o'clock on the afternoon of October 2nd Mrs. Alvord went to the basement to get some vegetables and she ''smelled escaping gas.'' She said that it was ''an offensive gas smell'' and that she had no difficulty in detecting the odor. She thought that Marjorie was the last person to have used the heater and that she had not turned it entirely off and when she came upstairs she said to Marjorie, ''I found some gas escaping and that the next time she shut it off I wanted to be with her  *  *  *.'' Marjorie admits the conversation with Mrs. Alvord. About two hours later Marjorie and Harold went to the basement and the explosion followed when they attempted to light the heater. The defendants contend, since Marjorie had been forewarned of escaping gas, that she was guilty of contributory negligence as a matter of law and, therefore, the trial court erred in not directing verdicts against her. It is in this connection that the appellants particularly urge that inattention and momentary forgetfulness (65 C. J. S., Sec. 120, p. 722) constitute negligence or no excuse for failure to investigate and that Marjorie was put upon such notice as to compel her to take some affirmative action before attempting to light the burner. Boland v. Thompson, (Mo. App.) 142 S. W. (2) 790; Tayer v. York Ice Machinery Corp., 342 Mo. 912, 119 S. W. (2) 240.

It was established, as has been noted, that a person with a normal sense of smell would be aware of the odor of escaped odorized propane. Odorization would attract the attention of the normally inattentive. Both Marjorie and Harold said that they did not smell gas. Mrs. Alvord was present and heard Harold's and Marjorie's conversation as they started to the basement but did not again say anything about gas and, of course, even though Mrs. Alvord may have smelled gas, she had no means of knowing its quantity or danger. In any event, ''Can the court say as matter of law that it is negligence for one to strike a match in a room where natural gas is present in sufficient quantity to be detected by smelling it?'' Dowler v. Citizens' Gas & Oil Co., 71 W. Va. 417, 76 S. E. 845, 847. It is possible to be forewarned and have some knowledge and yet it does not follow as a matter of course that one's appreciation of the danger is or necessarily must be such that he is contributorily negligent as a matter of law if he proceeds to act as an ordinarily prudent person would in the light of the knowledge and warning. Goldman v. City of Columbia, (Mo. App.) 211 S. W. (2) 541. It is not claimed, of course, that Harold was contributorily negligent as a matter of law and, in all the circumstances, whether Marjorie was guilty of contributory

negligence proximately causing her own injuries was for the jury. Northwest States Utilities Co. v. Ashton, 51 Wyo. 168, 65 P. (2) 235, 243; Dowler v. Citizens' Gas & Oil Co., supra.

We have held that there was evidence of probative force from which the jury could find that the propane gas was [391] not properly or sufficiently odorized and Macon Gas Company, as a distributor, does not question its duty to odorize or its liability if there is an evidentiary basis for a finding that it has breached its duty in that respect. Stephens v. Kansas City Gas Co., 354 Mo. 835, 191 S. W. (2) 601; Golden v. National Utilities Co., 356 Mo. 84, 201 S. W. (2) 292; Doxstater v. Northwest Cities Gas Co., supra. Phillips Petroleum Company admits that it was a vendor of the liquid petroleum. It was stipulated that the product was "ordered by the defendant, Macon Gas Company, from the defendant, Phillips Petroleum Company, and duly delivered by tank car and truck by the suppliers of the Phillips Petroleum Company, and was never in the physical possession of defendant, Phillips Petroleum Company." Other than as stated in the stipulation and as admitted in the briefs that Macon Gas Company "ordered" the gas from Phillips and that Phillips was the "vendor," it does not appear from the record just what, precisely, the arrangement was as between Phillips and the gas company. The six tank cars of liquid petroleum received by Macon Gas Company from July to September 1947 was manufactured by Sinclair-Prairie Oil Company, the Parade Company, Humboldt Oil & Refining Company and The Texas Company. It was consigned by the manufacturers from their plants in Texas, under uniform straight bills of lading, from Phillips Petroleum Company to the Macon Gas Company. Subsequently, by invoices the Phillips Petroleum Company billed Macon Gas Company for the liquid petroleum. The defendants' evidence shows that the liquid petroleum was odorized when it was placed in the tank cars. The bills of lading, prepared by the manufacturer-shipper, recited that one pound of Ethyl Mercaptan had been added to each 10,000 gallons of liquid petroleum. In the circumstances of this record and since it was not a manufacturer and never had physical possession of the product, Phillips Petroleum Company contends that it was under no duty to odorize and, therefore, the trial court erred in not directing a verdict in its favor.

The plaintiffs and Macon Gas Company contend that there was a duty upon Phillips to odorize the propane. Phillips was neither a manufacturer nor a retailer of the propane (Morris v. E. I. Du Pont de Nemours & Co., 341 Mo. 821, 109 S. W. (2) 1222; Dempsey v. Virginia Dare Stores, 239 Mo. App. 355, 186 S. W. (2) 217) and there was no statutory duty upon it to odorize. Willoughby v. Sinclair Oil & Gas Co., supra. It is argued, however, that it is of no consequence whether Phillips was a vendor or a manufacturer because "Phillips *supplied* all the propane in question" knowing that it was

to be distributed by the Macon Gas Company and, with such knowledge, undertook to odorize it. It is urged, therefore, that it was for a jury to say whether there was such a duty and whether that duty was breached. The product, of course, falls within the category of articles generally considered "inherently dangerous" (Annotation 42 A. L. R. 1243; Orr v. Shell Oil Co., 352 Mo. 288, 177 S. W. (2) 608; Compare: Prosser, Torts, Sec. 83, pp. 673, 685) but it does not follow from that fact alone that there was either a duty or negligence on the part of Phillips as a "supplier", or vendor. 35 C. J. S., Secs. 4, 6, pp. 223, 234. Dangerous as propane may be there was no defect, either latent or patent, in its manufacture. The danger to the ultimate consumer arises, in its normal use, from failure to odorize by adding another product or ingredient and the question is whether there was a duty and negligence upon the part of Phillips in that regard.

Certainly "any person furnishing a chattel for a use in which he has a business interest may be liable for his negligence to anyone who may reasonably be expected to be in the vicinity of its probable use." Prosser, Torts, Sec. 83, p. 687; Restatement, Torts, Sec. 392. A vendor of a product, manufactured by a third person, including "One who supplies directly or through a third person a chattel for another to use" may be subject to liability "if the supplier (a) *knows,* or from facts known to him should realize, that the chattel [392] is or is likely to be dangerous for the use for which it is supplied; (b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so." Restatement, Torts, Secs. 388, 392-393, 399. Phillips was aware of the use to be made of the product but there is no evidence in this case and no claim that Phillips *knew,* or "had reason to know" (Restatement, Torts, Sec. 401), that the propane had not been odorized and was therefore dangerous to use and so a breach of duty and liability could not be imposed on that theory. 46 Am. Jur., Secs. 805, 817, pp. 930, 942; 35 C. J. S., Sec. 6(b), p. 234. Compare: Orr v. Shell Oil Co., supra. Upon this record as far as Phillips actually knew or "had reason to know" all the propane shipped to Macon was odorized. Negligence on the part of Phillips could be found and consequent liability imposed, therefore, only by reason of a duty on its part to inspect the product, and it is not claimed, in the circumstances of this case and in the absence of knowledge or "reason to know," that any such duty arose or existed. 1948 Supplement Restatement Torts, Sec. 402, pp. 716, 718; Zesch v. The Abrasive Co. of Phila., 353 Mo. 558, 564, 183 S. W. (2) 140, 143; Shroder y. Barron-Dady Motor Co., (Mo.) 111 S. W. (2) 66, 70-71; annotation 86 A. L. R. 947; 89 Pa. L. R. 306; 40 Mich. L. R. 679. Compare: Orr v. Shell Oil Co., supra, and King v. Na-

tional Oil Co., 81 Mo. App. 155; annotation 168 A. L. R. 1054, 1069. Upon this record the trial court should have directed verdicts in favor of Phillips Petroleum Company.

Macon Gas Company contends that the trial court so prejudicially erred in refusing to sustain its motions to strike certain evidence that it did not have a fair and impartial trial and is therefore entitled to a new trial. As was noted in the beginning, there were several assignments of negligence and in the course of the trial the plaintiffs adduced evidence tending to support those charges. Some of the evidence, as the gas company points out, was not "connected up," as promised, and was in fact irrelevant. There was testimony as to the condition of a gas meter across the street, or next door, as to tests and leaks in gas mains on Pace and Rutherford Streets and as to the installation, service calls and complaints concerning Mrs. Itschner's floor furnace. At the close of the case the plaintiffs abandoned all their assignments of negligence except the charge of failure to sufficiently or properly odorize. Throughout the trial, and at the trial's close, the gas company objected to the testimony and asked that it be stricken but the trial court refused to do so. The company does not complain of the refusal of its withdrawal instructions but insists that the court erred in refusing to sustain its motions to strike the testimony from the jury's consideration. It would serve no useful purpose to set forth the evidence or the company's detailed argument that the testimony was so prejudicial as to prevent a fair trial. It would have been appropriate in this case for the court to have given several of the withdrawal instructions (Kick v. Franklin, 345 Mo. 752, 137 S. W. (2) 512) and it may be candidly stated that the court should have sustained the motions to strike the testimony, or instructed the jury to disregard it, (McGinniss v. Kansas City W. Ry. Co., 195 Mo. App. 390, 192 S. W. 115) but the question is whether the court's failure to do so was so plainly prejudicial as to deprive the gas company of a fair trial. Mo. R. S. 1949, Sec. 512.160 (2); 5 C. J. S., Sec. 1719(a), p. 948. In this respect the case is not comparable to the erroneous admission of evidence to impeach the credibility of the most important witness when the credibility of the witnesses was the only question the trial court had to determine and it appeared that the evidence had influenced the decision. Pierce Loan Co. v. Killian, 153 Mo. App. 106, 132 S. W. 280. All the arguments to the jury by counsel representing all the parties are set forth in the record in full and it is apparent from the arguments that the only question so far as liability was concerned was whether the gas had been properly and sufficiently odorized. And while the withdrawal instructions [393] were not given, all the instructions regarding liability made it perfectly clear that there was but one issue as to negligence and that was failure to properly or sufficiently odorize. Thus it is not made to appear from this record that the jury

1028

was affected by the improperly admitted evidence (5 C. J. S., Sec. 1724(b·), p. 964) and, therefore, it may not be confidently said that the evidence was so prejudicially unfair as to compel a new trial. Dietzman v. St. Louis Screw Co., 300 Mo. 196, 215, 254 S. W. 59, 64; Kidd v. Chicago, R. I. & P. Ry. Co., 310 Mo. 1, 44, 274 S. W. 1079, 1093; Jenkins v. Wabash Ry. Co., 335 Mo. 748, 73 S. W. (2) 1002, 1006.

Robert Franks ·was the gas company's foreman. He was the first company representative to reach the Itschner home after the explosion and it was he who made the soap tests for leaks. He was familiar with all the installations in the Itschner home and had made several service calls there. He was called as a witness by the plaintiffs and it is urged by the gas company that the court abused its discretion and prejudicially erred in permitting plaintiffs' counsel to cross-examine him since he was not an adverse party· and there was no showing of hostility to the plaintiffs on the part of the witness. It does not appear that the· witness was hostile but again the test is whether the conduct complained of was so unfair and prejudicial as to compel a new trial. Mo. R. S. 1949, Sec. 512.160. It was not insinuated, in the examination of this witness, that he had intimidated other witnesses or that he had been guilty of other improper conduct and so the case is not comparable to Burnam v. Chicago Great Western R. Co., 340 Mo. 25, 100 S. W. (2) 858. Here plaintiffs' counsel was permitted in several instances, but not as to important matters, to cross-examine Franks about testimony given in a deposition. As a matter of fact there was but little, if any, conflict in his testimony and his deposition. His testimony covers sixty-five pages of the record and analysis does not reveal that there was anything in his examination so prejudicial as to compel the granting of a new trial. Mauck v. Atchison, T. & S. F. Ry. Co., (Mo.) 154 S. W. (2) 73; Schipper v. Brashear Truck Co., (Mo.) 132 S. W. (2) 993, 1000.

In conformity with this opinion the judgment as to the Macon Gas Company is affirmed and the judgment as to Phillips Petroleum Company is reversed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.