CITY OF VILLA RICA and Southern Natural Gas Company, Appellants,

v.

Mrs. Marie COUCH and Mrs. Eva Broom, Appellees.

SOUTHERN NATURAL GAS COMPANY, Appellant,

v.

Mrs. Winnie Leathers DYER, Appellee.

No. 18082.

United States Court of Appeals Fifth Circuit.

July 22, 1960.

285

R. Emerson Gardner, Atlanta, Ga., Walter D. Sanders, Newnan, Ga., Hugh E. Wright, Atlanta, Ga., Shirley C. Boykin, Wm. P. Johnson, Carrollton, Ga., Moise, Post & Gardner, Atlanta, Ga., for appellant.

Hamilton Lokey, Atlanta, Ga., A. Cecil Palmour, Summerville, Ga., Anthony A. Alaimo, Brunswick, Ga., J. T. Johnson, Oneonta, Ala., Joseph L. Llop, Atlanta, Ga., Oscar W. Roberts, Jr., Carrollton, Ga., Cook & Llop, Atlanta, Ga., Bobby Lee Cook, for appellees.

Independent Natural Gas Association of America, by Lawrence H. Gall, Wash-

ington, D. C., Acting Gen. Counsel, Amicus Curiae.

Before HUTCHESON, JONES and WISDOM, Circuit Judges.

HUTCHESON, Circuit Judge.

Ordered by the Federal Power Commission, on December 29, 1953, and July 16, 1954, to serve the "City of Villa Rica, Georgia, a municipal corporation * * legally authorized to engage in the local distribution of natural gas", Southern Natural Gas Co., "a natural gas company within the meaning of the Natural Gas Act [15 U.S.C.A. § 717 et seq.]", began selling gas to Villa Rica in 1954, and delivering it at a point about six and one-half miles from Villa Rica, and it has since continued to do so pursuant to the contract which, providing for quantities and costs of gas and fixing the place of delivery as above, further provided:

"Purchaser [City of Villa Rica] shall also construct, maintain and operate pressure regulating equipment of standard type for the purpose of reducing the pressure of gas as delivered by Company [Southern Natural Gas Company] to a pressure suitable for introduction into Purchaser's system and an odorizing plant to introduce a warning odor into the gas after delivery by the Company."

On December 7, 1957, a gas explosion occurred in the City within the block in which Berry's drugstore was located. Three persons, among others, were killed in the explosion. The widows of two, and the mother of one, of them brought separate actions for alleged wrongful death. Mrs. Couch and Mrs. Broom sued William L. Berry, the owner and operator of the drugstore, the City of Villa Rica, the local gas distributor, and Southern Natural Gas Company. Mrs. Dyer sued only Berry and Southern Natural Gas Company.

While the gravamen of the original complaints was that the presence of escaping gas was known to all of the defendants and they were negligent in not

taking precautions to provide against an explosion, each complaint, as amended, added generally that the explosion was of natural gas which was insufficiently and, therefore, negligently odorized when distributed to Berry by Villa Rica, the owner and operator of the municipal gas distribution system, and, for want of proper warning, the danger from the leaking gas was not discovered in time to prevent the explosion and deaths.

The charges of negligence against Villa Rica included improper design, construction, and maintenance of its gas system; failure to locate the gas leak; failure to shut off the gas supply after notice of the leak; failure to warn the deceased persons, etc. Defendant Berry was alleged to have been negligent in failing to shut off the gas after the leak was discovered, failure to ventilate, failure to warn the deceased persons, etc. Many charges were made against Southern Natural, but there was evidence offered on only one, that of its failure to odorize the natural gas before it sold it to Villa Rica, and its consequent liability for Villa Rica's failure to do so.

For convenience the three cases were tried together and appealed upon one record. The verdict in each case was for defendant Berry and in favor of the plaintiffs against Villa Rica and Southern Natural Gas Company in the Couch and Broom cases and against Southern Natural in the Dyer case.

Judgments having been entered on the verdicts and the cases having been consolidated for appeal, both defendants are here insisting: (1) that verdicts should have been directed in their favor and the judgments must, therefore, be reversed and rendered; and (2) that, if not, procedural errors were committed on the trial and the judgments must be reversed and the causes remanded for trial anew.

In respect of the fact issue common to both appellants, whether there was evidence sufficient to support the claim that the gas was not sufficiently and, therefore, was negligently odorized, both vigorously insist that the evidence wholly failed to establish this fact, indeed, showing that the presence of escaping gas was known, established quite the contrary.

This issue aside, however, each stands upon and presents its individual defenses. Because this is so and because we are of the opinion that verdicts as to Southern should have been directed and that, as to it, the judgments must be reversed and here rendered, while as to Villa Rica, they must be affirmed, we shall, in setting down our reasons for these views, state them separately as to each appellant.

While, because of the trial of the three cases together and the personal opinion nature of a large part of the evidence as to whether particular individuals did or did not smell gas before the explosion, the witnesses are many and the question and answer record is voluminous, the substance of the evidence as material to the appeals may be put in reasonable compass.[1]

---

1. The issue of odorization.

It is undisputed: that both Southern and Villa Rica knew that the gas furnished by Southern was and would be unodorized when received by Villa Rica; that it recognized its obligation to odorize it and undertook to discharge the obligation.

The evidence established: that the odorizing station designed and constructed for Villa Rica through which the gas purchased from Southern moved on its way to customers was of approved design and capacity; that the type of odorizing equipment used, "Peerless Odorizer", the most commonly used odorizer, was a superior type of equipment manufactured by a reputable company, and was the best in its field.

The undisputed testimony shows that the gas was odorized with mercaptan, an odorant which has a sulphur base and produces distinct and separate olfactory reactions on different people.

It was testified, and no one disputed, that a sufficient quantity of mercaptan odorant was kept in the automatic odorizing plant, or station, at all times, and that before and after the explosion, there was sufficient mercaptan odorizer in the automatic odorizing station, and the odorizing plant was working at all times.

Natural gas in its natural state is odorless and sightless. When odorized at a

## The Case as to Southern Natural Gas Company

██ Appellant, Southern Natural, is here urging upon us that, under the point before it goes into any distribution system, it becomes odorized at any and every point in said system. There is no way to get the odor out, save burn it out. This is particularly true with reference to a system of the type installed by the City of Villa Rica. In the City of Villa Rica system, the one main gas line coming from the Southern Natural Gas line supplies the entire system. Any gas reaching any customer of the Villa Rica gas system necessarily passed through the automatic odorizing station.

On the morning of the explosion, many people in the City of Villa Rica smelled and detected the odor of odorized natural gas. Some of these detected and noticed the odor of odorized natural gas when lighting the heater, etc.

Mr. Oscar Hixon, the manager of the Villa Rica Gas Department with three laborers was making a new tap on the gas line within the system within the City of Villa Rica, at the time he received notice from the defendant Berry, by and through his clerk and employee, Ray Tyson, that a peculiar odor was prevalent in the drugstore. These workers testified that within a few minutes of the time of the explosion on the morning of Dec. 5, 1957, they noticed and detected the odor of odorized gas.

There was no direct or positive evidence whatever disputing the facts above stated, and there was also direct and positive evidence from many of the twenty witnesses, who testified to their sensations, that they had smelled odorized gas in and about the block where the explosion occurred during the week of the explosion; and negative testimony of many of them that they had not smelled it.

Reeves Jewelry Store, two doors from Berry's drugstore, reported a gas leak on Monday before the explosion on Thursday, but no leak was found.

A witness testified to hearing defendant Berry on his visit to the City Hall the morning of, and before, the explosion, to report the presence of gas, tell the clerk that he, Berry, had smelled gas for a day or two. Another witness swore that, after the explosion, defendant Berry told him that gas had been smelled in his store before it.

A witness, Vaughn, swore that Tyson, an employee of Berry's, had told him

undisputed facts, it was under no duty to odorize the gas and, therefore, was not responsible for the negligence, if any, of the City of Villa Rica, or any other person that natural gas had been smelled in Berry's for several days before the explosion.

Mrs. Bell, the operator of the dress shop next to the drugstore testified that Tyson told her Thursday that they had been smelling gas for three days in the drugstore and it had been burning their eyes.

Defendant Berry testified that on the morning of the explosion he ventilated his drugstore to remove the odor which was a "peculiar odor" different from normal odors in the prescription department. His eyes burned. He went to the City Hall to find the gas superintendent and later called the City Hall in a further attempt to find him.

The owner of Reeves Jewelry Store swore that prior to the explosion he had noticed the odor of gas about the premises. The same odor was noticed on the morning before the explosion, and he was concerned about having a gas leak.

Witnesses Lancaster, Baughn, Bohannon and Tyson, all of whom were in the drugstore at the time of the explosion, testified that they were blown up and fell back into the wreckage.

Both expert witnesses, Dr. Goodgain and Mr. Roush, testified that, for a person to be blow up, the explosion would have to be underneath the floor. Dr. Goodgain testified that if the gas were under the floor and not in the building, it could not be smelled by those in the building, even though properly odorized, and in a building with front and back doors and windows open, gas in the building would be dispelled and the odor dissipated.

Several witnesses, including defendant Berry, testified that the drugstore was ventilated the morning of the explosion.

Tyson testified that the two plumbers, requested by defendant Berry to check the odor, came into the store followed by the gas superintendent of Villa Rica, and that shortly thereafter the explosion occurred. These two plumbers were near the hot water heater in the drug store and immediately before the explosion Tyson saw the arm of one plumber moving up and down.

In opposition to the positive testimony as to the approved nature and character of the odorizing equipment and of the use in it of mercaptan, an approved odorant, plaintiff offered no direct evi-

son, in respect thereto and a verdict should have been directed for it.

While it is settled law that because of the dangers from the escape of natural gas and the fact that in its natural state it has no betraying odor, odorization before being distributed to consumers is proper, indeed necessary, it is equally settled law that Southern having sold, and Villa Rica having purchased, the gas with knowledge on the part of both that Villa Rica should and would odorize the gas, and, under the undisputed evidence it had made provision to do so, Southern was under no duty to odorize it and was not responsible for the explosion and the damages caused by it. So broad and comprehensive are the underlying propositions which support this view and so numerous are the authorities which sus-

dence in contradiction but relied entirely upon the negative testimony of some of the witnesses that, under the various conditions and circumstances recited by them, they did not smell gas before the explosion.

In recognition of the importance, indeed necessity, to their case, on the issue of odorization, of this sensory preception opinion evidence, appellees greatly stress it, while appellants, relying on the provision of the Georgia Code, Sec. 38–111 and the many Georgia decisions under it, that negative evidence would not be permitted to overcome positive evidence, greatly discount this testimony.

On the issue of notice to Villa Rica of gas leakage and its negligence in respect thereto in not taking proper action against danger, the following facts were established without contradiction:

Tom Pope, who testified that one of his duties was to look for leaks, checked Reeves Jewelry Store for leaking gas on December 2 at Gas Superintendent Hixon's request, upon complaint of Mrs. Reeves. Hixon checked it at Reeves request at 6:00 P.M. December 4. He then explained to Mr. Hixon that the odor seemed to be coming from the back of Berry's Drug Store. Hixon knew that the Berry Drug Store had been converted from a Butane service system. Hixon examined the Reeves building only. No pressure test was made to check the Reeves complaints. At no time did Pope cut off the gas to Reeves' store or undertake to ventilate the premises. Nor did he make an air test for leaks. On Tuesday Hixon checked Reeves' store. On Wednesday Hixon checked Reeves' store and was told the odor seemed stronger "up toward the back of the drug store". After checking around the jewelry store Hixon advised Reeves that he did not have a leak. Apparently no effort was made to see if the leak was somewhere else in the row of stores.

Dr. Berry called the City desk Dec. 5, complaining of gas odor and later came over personally about 9:30 complaining of an odor which had existed for two days, stating that he had become dubious about it. No records are kept of prior complaints. The City clerk did not attempt to get in touch with the Gas Service Department, although the City has a method for locating department heads. The City also has a Radio-Police set-up for this contingency.

Dr. Berry resorted to sending one of his employees for Hixon and Hixon arrived, at Berry's Drug Store about 11 o'clock. When Hixon arrived, he did not go to the back of the Drug Store, did not order the premises ventilated, did not take charge of the situation, did not order the occupants out, but walked in and said: "This is not gas I smell". Hixon came in as the Dyers did; walked over to where the Dyers were standing and watched them "tightening up something". They had been there only a short time when the explosion occurred.

When a warning odor is detected, flames should be extinguished, electric motors shut off, premises ventilated, and a check made for leaks. There was a cut-off back of Berry's Drug Store.

Dr. Goodgain testified as an expert on handling of natural gas that the safe procedure to follow in searching for a gas leak is: (1) get the people out of the building; (2) shut off sources of fire, such as pilot lights, electric motors and things that may spark; (3) ventilate the building thoroughly to get the gas out; (4) shut off the gas supply to the building; and (5) test for leaks with a device that is safe in the presence of explosive mixtures.

Gus Cobb, who succeeded Oscar Hixon as superintendent of the Villa Rica gas system, testified that the safe method in inspecting for gas leaks is: (1) cut off the gas going into the premises; (2) ventilate the premises; and (3) test for leaks with a gas detector pump. He further testified that it was unsafe to search for a leak inside the premises without first cutting the gas off. Mr. Frank Bennett, an expert witness for appellant Southern, testified that not to ventilate premises when the odor of gas is present "is the worst thing you can do."

tain it, that appellees, in pressing their claim, that under the facts of this case Southern owed a non-delegable duty, to the private consumers to whom Villa Rica supplied it, to odorize the gas, and that it could not rid itself of that duty, though it knew that the City of Villa Rica was conscious of its obligation to odorize the gas before distribution and had made provisions for doing so, find themselves hard pressed, indeed unable, to present a single sound reason or marshal a single apposite authority which supports their view.

Citing textbooks and cases dealing with agreements by an agent or contractor to discharge for his employer duties incumbent upon the employer, they seek in vain to analogize Southern's position as seller to Villa Rica to that of the employer in those cases. Basing their argument on the premise that it is the same and drawing the conclusion, impermissible under the applicable facts and law, that Southern had a non-delegable duty in this case to Villa Rica's customers as to whom, under the undisputed evidence in this case it had a right to and did assume that its vendee would exercise proper care in discharging its duty, appellees rely vainly, we think, on the Georgia case of Community Gas Co. v. Williams, 87 Ga.App. 68, 73 S.E.2d 119, Georgia Code, § 105–502, subd. (2),[2] and equally vainly on Winkler v. Macon Gas Co., 361 Mo. 1017, 238 S.W.2d 386; Parkinson v. California Co., 9 Cir., 233 F.2d 432, 436, and Hulke v. International Mfg. Co., 14 Ill.App.2d 5, 142 N.E.2d 717.

Meeting all of appellees' contentions head on, including the contention that there is adequate proof that the gas was not odorized, Southern argues that, since there was positive evidence that the gas was odorized and none that it was not, and the only reliance of appellees to support their position that it was not is on the opinion testimony of some of the witnesses that they did not smell gas, the case is one of an attempt by negative evidence to overcome positive evidence, and in Georgia this cannot be done. In support it cites: Georgia Code, § 38–111, which provides:

> "The existence of a fact testified to by one positive witness is to be believed, rather than that such fact did not exist because many witnesses who had the same opportunity of observation swear that they did not see or know of its having existed."

Hambright v. Western, 112 Ga. 36, 37 S. E. 99; and Myers v. Phillips, 197 Ga. 536, 29 S.E.2d 700. Cf. Winkler v. Macon Gas Co., 361 Mo. 1017, 238 S.W.2d 386, at pages 388–389.

Arguing in further support of this contention, that when the evidence taken as a whole is considered in the light of the undisputed evidence of Dr. Goodgain, that if the leaking gas was not in the atmosphere of the drugstore but was underneath its floor or under the floor of the shop next door and was properly odorized it could not have been smelled until it came into the store and into contact with the nostrils of the witnesses, it insists that the finding of the jury, if it did so find that the gas was not odorized, was without evidence to support it and was based only on surmise and suspicion.

On the applicable law, Southern invokes the established principles: that, even though it is known that gas is dangerous, it may be presumed, in the absence of knowledge to the contrary, that it will be safely confined and transported by a purchaser having knowledge of its nature and characteristics, Indiana Natural Gas & Oil Co. v. Jones, 14 Ind.App. 55, 42 N.E. 487; that a public utility will be maintained and operated in a proper and lawful manner, Hastings Co. v. Southern Natural Gas, 45 Ga.App. 774, 166 S.E. 56; and that, under the facts of this case, it could not have been reasonably foreseen that Villa Rica, the local gas distributor, would act in a negli-

---

2. "The employer is liable for the negligence of the contractor—2. If, according to previous knowledge and experience, the work to be done is in its nature dangerous to others, however carefully performed."

gent manner. Liberty Homes, Inc. v. Stratton, 90 Ga.App. 675, 83 S.E.2d 818; United States Steel Corp. v. McCraney, 5 Cir., 257 F.2d 457; Fisher v. Minneapolis & St. Louis Ry., 8 Cir., 199 F.2d 308; Union Tank & Supply Co. v. Kelley, 5 Cir., 167 F.2d 811.

Urging upon us that the district court correctly ruled on the trial of the case in accordance with cases from Georgia and elsewhere and so charged the jury, without exceptions from plaintiff, that, absent actual knowledge to the contrary, Southern could presume that Villa Rica's gas system and its personnel were such that it could and would properly deal with the gas, and, further, that, absent such knowledge, Southern had no duty to inspect Villa Rica's system or personnel, it cites many cases from Georgia and elsewhere, including Community Gas Co. v. Williams, supra, on which appellees strongly but vainly rely, in complete accordance with this view.

Discussing those cases which, dealing with the products liability doctrine, hold that it does not apply where the product is to be further processed before it reaches the consumer and the manufacturer supplier has no reason to believe that the further processing will not be properly done, and citing many cases in support, Liberty Mutual Ins. Co. v. Hercules, 3 Cir., 224 F.2d 293, 54 A.L.R.2d 513; Schneider v. Suhrmann, 8 Utah 2d 35, 327 P.2d 822; Hornsby v. Haverty, 85 Ga. App. 425, 69 S.E.2d 630, Southern invokes the principle stated in Sec. 388 Torts Restatement and applied in cases without number. Cf. Gulf Oil v. Wright, 5 Cir., 236 F.2d 46, 56, and Sword, Houston Fire & Cas. Ins. Co., v. Gulf Oil, 5 Cir., 251 F.2d 829, that the supplier of a dangerous commodity directly or through a third person is subject to liability to those whom he should expect to use it, only if the supplier: (a) knows of its dangerous potential, (b) knows or reasonably should know that the user will not realize the danger, and (c) fails to use reasonable care to safeguard against the danger or to inform the user of the facts which make it likely to be dangerous.

Addressing itself to the precise, the specific, situation which the facts of this case present, appellant takes its stand firmly on the proposition that a wholesaler supplier of gas to a local retailer has no duty to the ultimate consumer to odorize it where the supplier has no reason to believe that the gas will reach the consumer unodorized, citing in support Winkler v. Macon, 361 Mo. 1017, 238 S.W. 2d 386, supra, and the many authorities cited and discussed in it; Parkinson v. California Co., 9 Cir., 255 F.2d 265; and numerous other cases.

Finally, assuming for the purpose of the argument that it was negligent in not itself odorizing the gas, Southern insists that such negligence, under the facts of this case, was not in fact and in law the proximate cause of the explosion. The subsequent negligence of the City of Villa Rica was the independent, intervening and proximate cause which, superseding Southern's negligence, was in law the responsible cause.[3]

In respect to appellees' counter contention that the defense of subsequent negligence cannot apply in this case because Southern had and breached a "non-delegable duty", appellant urges upon us that this contention begs the question by assuming, contrary to the fact and law of the case, that Southern owed such duty. Cf. Community Gas Co. v. Williams, supra; Robbins Home Improvement Co. v. Guthrie, 213 Ga. 138, 97 S.E.2d 153; Georgia Code, §§ 105–501, 105–502; De-

---

3. Harley v. General Motors, 97 Ga.App. 348, 103 S.E.2d 191; Liberty Homes, Inc. v. Stratton, 90 Ga.App. 675, 83 S.E.2d 818; Kuhr Bros., Inc. v. Spahos, 89 Ga. App. 885, 81 S.E.2d 491; Washington v. Kemp, 97 Ga.App. 235, 102 S.E.2d 910; Nishida v. DuPont, 5 Cir., 245 F.2d 768; Hopkins v. DuPont, 3 Cir., 212 F.2d 623; Crude Oil Contracting Co. v. Insurance Co., 10 Cir., 118 F.2d 476; Walton v. Sherwin-Williams, 8 Cir., 191 F.2d 277; and E. I. DuPont De Nemours & Co. v. Ladner, 221 Miss. 378, 73 So.2d 249.

kle v. Southern Bell, 208 Ga. 254, 66 S. E.2d 218.

We find ourselves in substantial agreement with these views. Look at the case as one will, no statute providing otherwise, there is, under the facts of this case, no reasonable basis for the view that the defendant owed or breached any duty to the persons injured in this case, and it was, therefore, error not to direct a verdict.

In view of this holding, it is not necessary for us to consider the contentions of appellant, that the court erred in charging the jury, other than to say that it is quite clear that it follows from it that the charge of the court incorrectly submitted to the jury the question of law, whether Southern owed a duty, a question which was for the court to determine and which it should have determined in favor of Southern by directed verdict.

### The Case as to Villa Rica.

■ While, as we have said above in connection with Southern's appeal, we are of the clear opinion that the finding of the jury, if it did so find, that the gas was not odorized, was without evidence to support it and was based only on surmise and suspicion, we think it equally clear that the jury could, and did, find that the City was negligent in not taking proper precautions after complaints of escaping gas had reached it, and that such negligence was the proximate cause of the damages sustained and recovered by plaintiffs. Womack v. Central Georgia Gas Co., 85 Ga.App. 799, 70 S.E.2d 398.[4]

The record furnishes ample proof to support the finding implied in the verdict, that Villa Rica had ample notice of leaking gas, not only in Berry's Drugstore but also in adjacent premises, and that its negligent failure to take prompt corrective action commensurate with the dangers involved proximately caused the explosion.

■ On its claims of procedural error, the City stands no better. We think it quite clear that in the general charge to the jury, the court properly instructed them that the city was not liable for defects in installations on private premises unless it had knowledge or reasonable grounds for knowing that there were defects in them and thereafter failed to use reasonable care to prevent dangers therefrom. Its requested charge, limiting the city's duty of care to defects or troubles in its own lines, is not a correct statement of the law.

■ Its final point, that, since at the beginning of the trial the jurors were questioned, without objection being made, as to whether or not they were employees or stockholders or related to stockholders of certain insurance companies, it was reversible error, when during the trial of the case a witness, placed on the stand by the defendant Berry, stated that Berry had told him that he had insurance, not to grant the city's motion for mistrial or, in the alternative, permit it to show that it did not have insurance, is, we think, for the reasons hereafter stated, clearly without merit. First, the statement referred to Berry, another defendant. It did not refer to insurance carried by Villa Rica or raise any inference that it had insurance. Annotation 4 A.L.R.2d p. 819. Second, none of the cases cited by the appellant, Villa Rica, concern, as here, the liability of another defendant. Third, in a colloquy with counsel representing each defendant, the court, out of the presence of the jury, calling attention to the fact that if anyone was hurt by the proof, it was the defendant Berry, and he could not complain because his own counsel had brought the matter out, ruled that it would be improper, as against the other defendants, for the city to make proof that it was without insurance. Fourth, the court thereupon recalled the jury and,

4. Cf. Atlanta Gas Light Co. v. Gholston, 87 Ga.App. 40, 73 S.E.2d 49; Metz v. Georgia Public Utilities Corp., 52 Ga. App. 771, 184 S.E. 629; Southern Indiana Gas Co. v. Tyner, 49 Ind.App. 475, 97 N.E. 580; Skelly Oil Co. v. Holloway, 8 Cir., 171 F.2d 670; Chattanooga Gas Co. v. Underwood, 38 Tenn.App. 142, 270 S.W.2d 652.

with the apparent acquiescence of all the counsel since no further objection was made, instructed them as follows:

"Now Gentlemen of the jury, the witness on the stand here made some reference to insurance, I want to state to you that you will disregard that statement entirely. It has nothing to do with the issues in this case. You will no way be influenced in any sort of way by that testimony. I will ask you to please disregard it entirely and to give no thought or consideration to it in this case. Be very careful to observe those instructions."

The judgments against Villa Rica are affirmed. The judgments against Southern Natural Gas Company are reversed and here rendered.