**Ruby D. NOLTING, Plaintiff-Appellant,**

**v.**

**Isabel PETERSEN and Eugene J. Petersen, Defendants-Respondents.**

No. 32310.

St. Louis Court of Appeals. Missouri.

June 14, 1966.

Morris A. Shenker, Frank B. Green, Jr., St. Louis, for plaintiff-appellant.

Morris, Wuestling & James, St. Louis, for defendants-respondents.

BRADY, Commissioner.

Plaintiff brought this action to recover damages resulting from a fall down a common stairway in defendants' office building. Jury trial resulted in a verdict for plaintiff in the amount of $7,500.00. The trial court sustained the defendants' motion for new trial specifying the two grounds upon which it based its ruling. We have herein determined that the first of these assigned reasons properly supports the trial court's action and thus we need not rule upon the other. Accordingly, we will set out in this opinion only the facts that bear upon the contention defendants were prejudiced by an improper comment made by the trial court while ruling upon an objection.

It is first necessary that we digress from the merits of this cause to consider the defendants' motion to dismiss this appeal. This motion is based upon the contention the plaintiff's brief violates Civil Rule 83.05, subparagraphs (a) and (c), V.A.M.R., in that the statement of facts contained therein is neither fair nor concise nor without argument, contains voluminous irrelevant material, and that verbatim testimony has been substituted for " * * * a statement of the facts relevant to the questions presented for determination. * * *" We will deal with these matters in reverse order.

█ The plaintiff's brief contains several lengthy verbatim excerpts from the transcript primarily dealing with evidence bearing upon the contention one of the jurors intentionally misrepresented facts regarding his prior involvement in litigation. That issue really turned upon whether plaintiff's counsel so framed his questions to the juror that the juror could not, as he later claimed he did, have misunderstood. We do not reach this point under our disposition of this appeal but had it proved necessary to do so, the matters set out verbatim from the transcript would have been most enlightening and, in fact, really determinative of the matter. In any event, there was no substitution here involved as the verbatim excerpts were additional material to the statement of facts which set out, in summarized form, essentially what happened. In view of the nature of this issue, we cannot hold that verbatim excerpts of this nature so violate the rule as to require dismissal of this appeal.

█ The other allegations of the motion can best be considered together. The statement of facts found in plaintiff's brief does go at length into matters not before this court on this appeal. For example, it contains a summary of the evidence relating to the extent of plaintiff's injuries and her expenses for treatment. In view of the issues raised upon this appeal that evidence is irrelevant. It is also true there is some argument interspersed in the statement of facts as where the statement of facts contains the argument, together with case citations, made by plaintiff's counsel on the is-

sue of juror voir dire misrepresentation. However, we have determined that the violations of the rule, while serious and easily avoidable, are not so extensive as to cause us to sustain the defendants' motion to dismiss this appeal. That motion is denied.

The facts bearing upon the determinative issue of this appeal need to be stated somewhat broadly so that a proper perspective may be obtained. The chain of events pertinent to the issue herein decided began with the voir dire examination when plaintiff's counsel asked the members of the panel (a proper foundation presumably having been laid although the transcript does not disclose it), "Do any of you or any members of your immediate family—someone living in your household—work for or have any financial interest in the Globe Indemnity Company?"

We pass next to several pertinent matters occurring during trial. The plaintiff's version of this action was that her left shoe caught underneath some raised metal stripping on the top step of the common stairway and she fell head first down the stairway. There was other evidence offered on behalf of plaintiff as to the metal stripping being raised, weak, loose and flexible. To rebut this evidence the defendants offered the testimony of William P. Carleton, Jr., a general insurance agent who occupied offices on the same floor of defendants' building as did the plaintiff's employer. He testified that he was in and out of his office four or five times a day for five days a week; that he would walk on the top step in reaching his office; that it was not weak and neither did it rock nor was it flexible but was in excellent condition; that certain of plaintiff's photographs did not properly represent the steps as they appeared on the date plaintiff fell; that he had moved heavy furniture into his office and this was why he knew the condition of the steps was good; and that the metal stripping was not loose nor was it raised above normal.

Photographs were taken of this stairway and the top step by photographers employed by each of the parties. The trial court permitted plaintiff's counsel to cross-examine the photographer employed by the defendants as to who paid him for the three photographs he took and identified at the trial. As a result the name of the Royal-Globe Insurance Company (no issue is raised as to the change in name from the company named in the voir dire) appears in evidence some ten times within two pages of the transcript. The culmination of all this reference to an insurance company occurred when, over objection, the photographer was asked this question to which he gave the answer shown: "Q Do you know what the Royal-Globe Insurance Group's interest was in having you make those photographs? MR. MORRIS: If the Court please, I object to that as not being material or relevant and it is highly prejudicial. THE COURT: Overruled. A The Royal-Globe Insurance Group insured the Clayton Realty Company."

Keeping that evidentiary background in mind we pass to the next link in the chain of events leading to the comments the trial court later found prejudicial. During his closing argument counsel for the defendants directed the jury's attention to certain of plaintiff's photographic exhibits and stated: " * * * If you look at the photographs plaintiff took, the only photograph—look at these photographs and tell me whether or not that photograph of April 4, 1963, has been jimmied or somebody has stuck a wedge or burglary tool under there or a screw driver, raised it up and then taken the photograph. * * *" Later in that argument counsel stated, " * * * Somebody jimmied those photographs, there is no doubt about that in my mind. * *" Still later in his argument defendants' counsel stated: "Let's consider the photographs again. I don't see how who paid for somebody's photographs can affect what it can reflect, what appears in the photographs. Maybe this is the kind of photographs Mr. Green and his office take. This is a civil,

not a criminal case. The photographer is supposed to take what is there and not change it and then take a photograph. You know, once you mend metal and put it back it will show, and there are no defects in his photographs. Compare those photographs."

During the reply portion of his closing argument counsel for plaintiff, obviously answering that portion of defendants' argument set out above, said: "What this lady did is what happens to people who fall down. This, I submit to you—who here thinks, and I'll look every one of you in the eye, I'll look Mr. Morris in the eye, which of you thinks I would have something to do with jimmying pictures? You know it takes four years to go to law school. I've been doing this for about ten years and nobody has really ever accused me of jimmying up some pictures or some evidence. I think you can ask around—this is the first experience I've had in Judge Ferriss's Court, and I must say I've had extremely fair treatment at his hands, and every courtesy, but a lot of lawyers know me, Jack Morris knows me well, and it is a disgrace for him to stand there before you and argue something he knows, in all honesty, isn't true. *Now, it hurts me to have this done, but it hurts everybody to have somebody come in and not tell the truth about them. I think it hurt Miss Nolting when this advocate for the insurance company, Mr. Carleton—* * *.*" (Emphasis supplied.) Defendants' counsel objected at that point and the court made the following ruling: "*I'll sustain the objection to the characterization of Mr. Carleton as being an advocate for the insurance company. He's an insurance agent, but it has nothing to do with the other insurance company; at least there is no evidence of it.*" (Emphasis supplied.)

After the jury left the courtroom to deliberate, Mr. Morris moved that a mistrial be declared stating: " * * * I feel the jury was further prejudiced by the Court's further remarks—by the remarks that Mr.

Carleton apparently hasn't anything to do with the other insurance company, or it has not been shown. I feel that the jury, hearing the Court's remarks, will, no doubt, put a great deal of weight to them. I am sure it was inadvertently done by the Court, but I feel my client was prejudiced * * *." The trial court overruled the motion for mistrial.

In granting the defendants' motion for new trial the trial court specified that it did so on the grounds set out in certain paragraphs of the defendants' motion. In that part of those paragraphs pertinent to the issue herein ruled the defendants alleged the trial court " * * * committed prejudicial error in commenting to the jury during the closing argument of plaintiff's counsel * * *" that the witness Carleton, while an insurance agent, had " * * * nothing to do with the other insurance company or at least there was no evidence of it * * *." It should immediately be pointed out that although the defendants were granted the only relief they asked for when the trial court sustained their objection and although the motion for mistrial was not made until later, there is no issue herein raised by the plaintiff as to the timeliness of the defendants' motion for mistrial.

The defendants' contention in their motion for new trial and in their brief before this court is twofold. They urge that the court's comment improperly and unnecessarily injected the issue of insurance coverage into the case and that the comment had the effect of destroying the credibility of the witness Carleton. It is our rule that whether a mistrial should be granted because of improper injection of insurance into a case is a matter for the proper exercise of a sound discretion by the trial court and only in the event of a manifest abuse of judicial discretion should the appellate court interfere. Gray v. Williams, Mo.App., 289 S.W.2d 463. We have earlier in this opinion set out the occurrences during the trial of this cause which indicate

that the issue of insurance coverage was brought out repeatedly and most clearly many times prior to the occasion of the trial court's comment. However, it may well be that the trial court thought its remark constituted the proverbial straw.

 However, we do not place our ruling upon that basis for regardless of the question of the injection of insurance coverage we hold the trial court properly ruled in granting the defendants a new trial. This for the reason that, as stated in Duncan v. Pinkston, Mo., 340 S.W.2d 753, l. c. 757, it is improper for a trial judge to indicate any opinion on an issue of fact or on the merits of the case or the credibility of the witnesses or the weight and sufficiency of the evidence or other similar matters. We might regard the comment made by the trial court as mild and as not sufficient to destroy Carleton's credibility. Yet we should not substitute our judgment on such a matter for that of the trial judge who was present in the courtroom and thus was in a better position to judge the effect of his remark when placed in the context of the whole trial.

It is fundamental to our system of appellate review that we are more liberal in upholding an order granting a new trial than in reversing and remanding a cause and this is especially true in those instances where the order granting the new trial involves the exercise of judicial discretion on the part of the trial court. Venditti v. St. Louis Public Service Co., 360 Mo. 42, 226 S.W.2d 599, l. c. 604 and cases there cited. It is also our rule that where the trial court grants a new trial on grounds which indicate the trial judge was of the opinion there was prejudice, the reviewing court will defer to that ruling. Woodworth v. Kansas City Public Service Co., Mo., 274 S.W.2d 264, l. c. 270, 271; Sho-Me Power Corp. v. Fann, 365 Mo. 1042, 292 S.W.2d 91, l. c. 95.

The judgment should be affirmed.

PER CURIAM:

The foregoing opinion by BRADY, C., is adopted as the opinion of the court. The judgment is affirmed.

ANDERSON, Acting P. J., RUDDY, J., and LACKLAND H. BLOOM, Special Judge, concur.

WOLFE, J., not participating.