**J. T. GATHRIGHT, Administrator of the Estate of Rita Yvonne Gathright, Deceased, and J. T. Gathright, Respondents,**

v.

**Glenn W. PENDEGRAFT, City of Fulton, Missouri, and W. D. Vaughn, doing business as Vaughn Plumbing and Heating, Appellants.**

No. 52767.

Supreme Court of Missouri, Division No. 2.

Sept. 9, 1968.

As Modified on the Court's own Motion and Motion for Rehearing or for Transfer to Supreme Court Denied Nov. 12, 1968.

Roth v. Goerger et al., 118 Mo. 556, 24 S.W. 176.

Hendren & Andrae by John E. Burruss, Jr., and Kelly Pool, Jefferson City, for respondents.

John L. Hearne, Keyes, Bushman & Hearne, Jefferson City, for Glenn W. Pendegraft, appellant.

W. C. Whitlow, Fulton, Robert L. Hawkins, Jr., Graham & Hawkins, Jefferson City, for appellant City of Fulton.

Richard R. Nacy, Jr., Jefferson City, for appellant W. D. Vaughn.

STOCKARD, Commissioner.

The action of Rita Yvonne Gathright for personal injuries, and the derivative action of her husband, J. T. Gathright, were consolidated for trial. Pursuant to jury verdicts the trial court entered judgment against all defendants in favor of Mrs. Gathright in the amount of $50,000, and in favor of J. T. Gathright in the amount of $5,000. Each defendant has appealed. Mrs. Gathright died subsequent to trial and J. T. Gathright as administrator of her estate has been substituted as plaintiff-respondent in her case.

In the spring of 1960, defendant Glenn W. Pendegraft, a general contractor, started the construction of a house at 1109 Cote Sans Dessein Road in Fulton, Missouri. Before the house was completed Mr. and Mrs. Gathright agreed to buy it, but in order to do so it was necessary to obtain a "V.A. loan." Although the house was "substantially completed" in October 1960, approval of the loan was not obtained until about the first of May 1961.

The plumbing work for the house was done under contract by defendant W. D. Vaughn. His employees constructed gas pipes to the furnace, the water heater, and to the area under the kitchen. A "T" was placed in the pipe under the kitchen and from each arm of the "T" a copper pipe was run vertically through the floor to the area of the range and oven. According to Mr. Vaughn the gas line was not connected to either the oven or the range. His workmen testified, however, that one of the copper pipes was connected to the oven, but the range had not then been placed in the counter and for that reason the other copper pipe could not be and was not connected to it. That pipe was not capped or plugged. At the time the gas meter had not been installed. Mr. Vaughn testified that he told Mr. Pendegraft that the job was not finished, and that when the house was ready to receive gas Mr. Pendegraft was to notify him and he would return and test the system. Mr. Pendegraft denied this conversation took place. Mr. Vaughn was never notified that the house was ready to receive gas, and he was not requested to test or inspect the system, and he did not do so.

On May 3, 1961, after approval of the "V.A. loan" was received, Mr. Gathright requested the City of Fulton, the supplier of natural gas, to install a meter at the house, and this was done by a city employee. A valve located at the curbline was turned on. The valve located at the meter was turned off but not sealed.

Mr. and Mrs. Gathright planned to move into the house on May 13, but during the preceding week they intended to move small articles into the house. Late in the afternoon of May 7, a Sunday, Mr. Pendegraft asked Mr. Edwin O. Thompson, a plumber who was working on his daughter's house nearby, to repair a broken water pipe in the basement of the Gathright house, to turn on the gas, and then light the water heater. Mr. Thompson did repair the water pipe, and according to Mr. Pendegraft he also turned on the gas at the meter. However, Mr. Thompson denied that he turned on the gas, and testified that when he checked the water heater he found that the gas had already been turned on so he lit the heater. For this work, Mr. Pendegraft paid Mr. Thompson two dollars.

On the afternoon of May 8, Mrs. Gathright requested Mr. Pendegraft to unlock the house. When they entered the basement Mrs. Gathright remarked that she "smelled something which smelled like it could be gas," and Mr. Pendegraft examined the water heater and found that the pilot light was burning. Mr. Pendegraft testified he smelled nothing, but he admitted that his sense of smell was not

normal, and that there could have been odors that he did not detect. Mrs. Gathright said that it was not a strong odor, that she was not sure what it was, and that she could not say it was a distinct odor of gas. After Mr. Pendegraft checked the water heater, she "thought nothing more about it." Mrs. Gathright and Mr. Pendegraft then went to the first floor of the house, inspected two bedrooms, and went to the kitchen area. Mrs. Gathright said that upstairs she smelled some odors peculiar to a new house such as "new wood and paint," but she did not identify any odor as being natural gas. While attempting to light a burner on the range, Mr. Pendegraft lit a cigarette lighter and an explosion resulted which did extensive damage to the house and inflicted the injuries to Mrs. Gathright which are the basis of her cause of action and that of her husband. Certain other facts will be mentioned in the course of the opinion.

Plaintiffs' submission of negligence as to each defendant was as follows:

As to defendant Glenn W. Pendegraft the submission was that he negligently (1) turned on the gas and caused it to flow into the pipes of the house without first inspecting, or causing the gas pipes to be inspected to determine if it was safe to start the flow of gas into them; or (2) caused and permitted temporary, unsafe or makeshift conditions of piping to exist in the house in violation of an ordinance of the City of Fulton; or (3) failed to test and inspect or cause to be tested and inspected, or determine whether there had been an inspection of the gas piping in the house in violation of an ordinance of the City of Fulton. In addition, there was a submission as to Mr. Pendegraft that his employee, Mr. Thompson, negligently turned on the gas and caused it to flow into the pipes of the house without first inspecting them, or without first ascertaining whether an inspection had previously been made.

As to defendant City of Fulton the submission was that it negligently "failed to odorize the natural gas which it supplied sufficiently that a person with a normal sense of smell could detect the presence of the gas."

As to defendant Vaughn the submission was that he negligently (1) "failed to connect the cooking stove in the house to the gas pipes installed therein, and also failed to cap or plug said pipes," or (2) "failed to connect, cap or plug the gas pipes leading to the cooking stove or oven in the house for a period of several months after completing the system of gas piping for the house without determining when the gas meter would be installed and without giving warning to other persons of such open gas pipes in the house," or (3) caused or permitted temporary, unsafe or makeshift conditions of piping to exist in the house in violation of an ordinance of the City of Fulton, or (4) "failed to test and inspect the gas piping in the house" in violation of an ordinance of the City of Fulton.

The City of Fulton contends that the trial court erred in overruling its motion for a directed verdict because (1) plaintiffs did not allege in their petitions that the City of Fulton violated "any legal duty with respect to odorization of natural gas," and (2) the evidence was insufficient to support a finding by the jury that the City of Fulton failed to odorize the gas so that a person with a normal sense of smell could detect the presence of the gas.

■ Plaintiffs' allegation of negligence on the part of the City of Fulton was that it "negligently and carelessly failed properly and sufficiently to odorize the gas supplied by it to the said house so as to enable the detection of its presence by [Mrs. Gathright] and others upon the premises." In Fields v. Missouri Power & Light Company, Mo., 374 S.W.2d 17, at p. 27, it was held that the duty of the supplier of natural gas is not to odorize it so that a particular person could detect its presence, "but to odorize it so that it could be detected by a person with a normal sense of smell." The City of Fulton argues that

this allegation in the plaintiffs' petition did not charge it with a violation of any legal duty.

■ Although the allegation of the petition as to the duty of the City of Fulton was poorly worded, we think when given a liberal construction, Zuber v. Clarkson Const. Co., Mo., 363 Mo. 352, 251 S.W.2d 52, and in the absence of a motion to strike or to make definite and certain, the City of Fulton was not misled but was fully informed that the issue tendered by the pleadings was the same as the issue subsequently submitted to the jury in the instructions. However, as subsequently demonstrated, the issue as submitted by the instruction was supported by evidence to which no objection was entered. See Harris v. Goggins, Mo., 374 S.W.2d 6; Heald v. Erganian, Mo., 377 S.W.2d 431; Civil Rule 55.54, V.A.M.R. The City of Fulton asserts that it did not object to the testimony respecting the ability of Mrs. Gathright to smell because it had alleged contributory negligence on her part which included a failure to act upon a warning received. We note, however, that no instruction submitting contributory negligence of Mrs. Gathright was requested by the City of Fulton, and none was given. Secret reasons by a party for not objecting to evidence cannot be controlling, and evidence admitted without objection, regardless of the reason, brings into effect the provisions of Civil Rule 55.54 that issues not raised by the pleadings which are tried by express or implied consent of the parties shall be treated in all respects as if they had been raised by the pleadings.

Certain additional facts are necessary for the consideration of the contention by the City of Fulton that the evidence was insufficient, as a matter of law, to permit the jury to find that it failed to odorize the natural gas supplied to the house so that, as submitted by Instructions 10 and 18, "a person with a normal sense of smell could detect the presence of the gas."

The City of Fulton maintained facilities to odorize the natural gas supplied by it, and according to the city clerk it was using an odorant called "Colodorant 'C'," but there was no "written record" kept of the quantity of the odorant used. There was no evidence concerning the amount of odorant necessary to odorize properly the gas, and there was no evidence of the amount of odorant that had been or was being mixed with the gas.

Mr. Thompson testified that on May 7, the day before the explosion which injured Mrs. Gathright, he lit the water heater, and in the process of doing so he had to bleed the air out of the pipe and wait for the gas to come through. He testified that "after the gas started coming through" he could and did smell it, even though, according to him, he could not "smell too good." There was no evidence concerning the amount of time Mr. Thompson permitted the gas to flow through the water heater, or how close he was to the source of the gas. However, it can reasonably be assumed that in the process of lighting the heater he was close to the escaping gas when he detected its presence by his sense of smell. Mr. Pendegraft had an opportunity to smell gas in the house when he entered the basement with Mrs. Gathright and then went upstairs. He testified that he smelled nothing, but he also testified that he did not have a "normal sense of smell." Mrs. Gathright thought she smelled something that smelled like gas in the basement, but after Mr. Pendegraft checked the water heater she "thought nothing more about it." She stated that it was a faint odor and they had just come in from outdoors. When she was upstairs she did not detect the odor of gas. She said that she had smelled gas before, she was familiar with its odor, she had "a very good sense of smell," and if she "smelled gas upstairs [she] would have known it." This was all of the testimony from those who had an opportunity to detect the odor of gas in the house.

The City of Fulton argues that "it is incredible that gas from the same source would be detectible in the basement and not detected upstairs," and it says that it is upon this "slim bit of evidence, negative in character, disputed by plaintiffs' witness Thompson, with no corroboration or support from plaintiffs' witness Pendegraft and tempered by the admission that the odor was detected in the basement and that there were odors upstairs that plaintiffs rest their claim." Some of these matters could have been considered by the jury on the issue of contributory negligence if such issue had been submitted. These circumstances do not establish, however, that the City had odorized the gas properly. The facts still remain, at least the jury could find, that in the upstairs area where the explosion occurred, Mrs. Gathright, who had a "very good sense of smell," did not detect the odor of gas, and that there was in fact sufficient gas in the air to be explosive. The negative fact, that the City did not sufficiently odorize the gas, would ordinarily be proved by negative evidence that the presence of gas was not detected by a person with an ordinary sense of smell. In proper circumstances, which this case presents, such negative evidence can constitute probative evidence from which a jury can properly find the negative fact. Lafferty v. Wattle, Mo.App., 349 S.W.2d 519, 527; Winkler v. Macon Gas Co., 361 Mo. 1017, 238 S.W.2d 386; 30 Am.Jur.2d Evidence § 1092. The circumstances in this case include the facts that a gas pipe to the range was left unconnected and uncapped, that the gas was turned on, that natural gas is explosive when mixed with air and cannot be detected unless properly odorized, that a voilent explosion occurred, and the City had facilities to odorize the gas. The trial court correctly submitted to the jury the issue of whether the City of Fulton had failed to odorize sufficiently the natural gas supplied by it.

Defendants City of Fulton and Pendegraft assert that prejudicial error resulted from a remark of the trial court to the jury panel. After naming the parties and their counsel the court commented that the general nature of plaintiff's claims was for damages "resulting from an explosion, a gas explosion that occurred." An objection was made to the court's description of the incident "as a gas explosion" on the ground that "there is a great question as to whether there was a gas explosion," and that it was prejudicial for the jury panel to be told by the court that the explosion was from gas. The request for a mistrial was denied, and in referring to the claims of plaintiffs the court then stated, "they allege that they sustained [injuries] as a result of an incident on May 8, 1961."

As stated in the cases cited by defendants City of Fulton and Pendegraft (Duncan v. Pinkston, Mo., 340 S.W.2d 753, and Nolting v. Petersen, Mo.App., 404 S.W.2d 410) a trial judge should not indicate an opinion on an issue of fact. Here the comment of the court at most constituted an inadvertent statement of plaintiffs' pleaded contention, and as noted, the only request was for a mistrial. Whether an incident occurring in a trial requires the drastic action by the trial court of declaring a mistrial, or whether the prejudice, if any, can be removed by some less drastic corrective action is a matter within the sound discretion of the trial court. Absent manifest abuse of that discretion, which did not occur in this case, an appellate court should not interfere with the trial court's action. See Garrison v. Ryno, Mo., 328 S.W.2d 557, and Conrad v. Twin Oaks, Inc., Mo.App., 344 S.W.2d 286.

Defendants City of Fulton and Pendegraft also assert error resulted from the admission in evidence of plaintiffs' Exhibit 11, a photograph of Mrs. Gathright, because it was not sufficiently identified as to the accuracy of the color and as a true and accurate portrayal of her appearance immediately prior to May 8, 1961.

Exhibit 11 is a colored photograph of Mrs. Gathright. It appears to be the usual colored or tinted photograph obtained from

a professional photographer. It shows only her head, face and part of her shoulders. Mr. Gathright identified the photograph as Mrs. Gathright's "engagement picture," and he testified that immediately prior to May 8, 1961, she "looked very much like this picture," and that the photograph was "very accurate." He did not know who took the photograph or what process of retouching was used. This photograph did not purport to show personal injuries which had been sustained and were the basis of the litigation. There is no contention that the tinting or coloring is exaggerated. It is argued that after the photograph was taken and before May 8, 1961, she had had a serious illness, but there was no contention that immediately prior to May 8 she had not recovered, at least as far as appearances were concerned.

■ Generally, colored photographs are admissible in evidence subject to the same limitations and restrictions as black and white photographs, Faught v. Washam, Mo., 329 S.W.2d 588, 599, and both kinds of photographs are admissible in evidence to indicate or show the physical condition of a person at a particular time, provided they accurately portray and do not exaggerate the condition. Faught v. Washam, Mo., supra, at pp. 599–600; Reed v. Shelly, Mo.App., 378 S.W.2d 291, 303. As to the use of colored photographs, see generally, Horowitz v. Bokron, 337 Mass. 739, 151 N.E.2d 480; Killary v. Burlington-Lake Champlain C. of C., Inc., 123 Vt. 256, 186 A.2d 170; Floen v. Sund, 255 Minn. 211, 96 N.W.2d 563; and the annotation at 53 A.L.R.2d 1102. Mrs. Gathright's injuries included burns about the face and head which left scars. The photograph was offered to show that those conditions which the jury could see at the time of trial did not exist before the explosion and fire. We find no abuse of discretion in the admission in evidence of Exhibit 11.

Defendant Vaughn contends that the trial court erred "in excluding the issue of intervening cause." He argues that the "negligence of others intervened between any possible negligence of [his] and the plaintiffs' injuries," and for that reason he was entitled to a directed verdict. He also contends that the trial court erred in refusing his requested Instruction DV-H, and in giving plaintiffs' Instructions 12 and 20 which did not hypothesize anything regarding intervening cause. Certain additional facts will be helpful.

According to Mr. Vaughn, when he and his employees left the house in September or in October of 1960, the job had not been completed because all of the appliances had not been connected and he had not checked or inspected the gas system. He testified that he did not know if the copper pipes were capped or plugged, but that Mr. Pendegraft was to call him to complete the work and he did not do so. Even though Mr. Vaughn knew that the range, (and according to him, the oven) had not been connected he never made any inquiry. Mr. John M. Lawson, a plumbing contractor, inspected the house after the explosion and fire. The oven and the range each had a one-half inch threaded iron pipe to which the copper pipe was to be connected by means of "flaring" the copper pipe and attaching it to the iron pipe by means of an adapter. Mr. Lawson testified the copper pipes "appeared as if they had not been flared," but the ends were "damaged" and they appeared as though an attempt to flare them might have been made. In the ashes on the floor Mr. Lawson found an adapter suitable to be used in connecting the copper piping to a gas appliance. There was no adapter unit on the range. The oven unit had "an adapter and a loose flare nut" on it, but the copper tubing was not attached to it. The copper tubing, when examined by Mr. Lawson, extended "essentially straight up" through the floor for 18 to 30 inches.

Defendant Vaughn argues that the evidence establishes that when he and his employees last worked at the house the range had not been installed in the counter and the copper pipe for the range was coiled beneath the cabinet, but after the

fire the pipe was a vertical piece 8 to 24 inches in length, which had been damaged and an adapter was found near by. He further argues that this establishes that someone cut a hole in the counter and installed the range, cut off a length of the copper pipe and straightened out the remaining part, and made an effort to flare the pipe and connect it to the range with the adapter subsequently found on the floor in the ashes. He contends that as a matter of law this amounted to an intervening cause, and he was entitled to a directed verdict.

■■■ This argument assumes that a jury would be required, under the evidence, to find that after Mr. Vaughn and his employees installed the copper pipe to the area below the range and left the pipe unconnected and uncapped, some unknown person attempted to connect the copper pipe to the range, and that they did so negligently. This would be based on inferences not required by the evidence although perhaps permissible. In addition, the duty on Mr. Vaughn was to cap the unconnected pipe or to warn of its condition, and not to leave the pipe in a dangerous condition when he knew or should have known that the gas could be turned into the pipe. An intervening cause must be a "new and independent force which so interrupts the chain of events that it becomes the responsible, direct, proximate, and immediate cause of the injury," King v. Ellis, Mo., 359 S.W.2d 685, but it may not consist of merely an act of concurring or contributing negligence. Dickerson v. St. Louis Public Service Co., 365 Mo. 738, 286 S.W.2d 820, 824. We cannot say as a matter of law that a negligent tampering with the pipe, or a negligent attempt by some third person to do an act which was the duty of Mr. Vaughn to perform and which he negligently did not perform, was the efficient intervening cause and not an act of concurring negligence. Defendant Vaughn was not entitled to a directed verdict on the basis of intervening cause.

Defendant Vaughn next asserts that the trial court erred in refusing his requested instruction as follows: "Your verdict must be for defendant Vaughn even though you believe that Vaughn left the end of the copper tubing for the stove uncapped when he and his men ceased work at the house, if you further believe that prior to the explosion someone other than defendant Vaughn or his employees tampered with and did work on and affecting the end on said copper tubing and attempted to attach the tubing to the stove."

■■■ Aside from the fact that the requested instruction does not require a finding in the language of MAI, that the "tampering" and "work" on the pipe "directly caused" the injuries, the defense of intervening cause is not submissible under MAI in the manner attempted. The defense of an intervening cause is that the negligence charged against the defendant was not the proximate cause of plaintiffs' injuries because the act of another was the "responsible, direct, proximate, and immediate cause of the injury." Since this intervening cause, which is the proximate or direct cause, cannot consist of an act which is concurring or contributing negligence, it necessarily must constitute sole proximate or direct cause, and "sole cause" instructions are not now authorized. MAI 1.03. A defendant may submit the issue of an intervening cause by a converse of the submission of proximate cause in plaintiff's instruction, and the supporting facts may be argued to the jury. The trial court correctly refused the instruction requested by defendant Vaughn, and of course, plaintiffs were not required to negative intervening cause in their verdict directing instructions.

Defendant Vaughn next asserts that the trial court erred in admitting into evidence "portions of the hospital records" pertaining to Mrs. Gathright "because there was a complete absence of proper qualification of them under the Uniform Business Records as Evidence Law."

Mrs. Laura Steiferman testified that she was the medical records librarian at the Callaway Memorial Hospital and she identified plaintiffs' Exhibits 17 and 18 as being the hospital records pertaining to two periods of hospitalization of Mrs. Gathright. Mrs. Steiferman testifed that she was familiar with the manner of making and maintaining records in the hospital, and she described those parts of the record which had been prepared by "admitting personnel," the attending physician, and the nurses. She stated that the information was entered of record at or near the time it was obtained and that the records were prepared and kept in the regular course of the hospital business. Mrs. Steiferman was not employed by the hospital at the times Mrs. Gathright was a patient, and she was not personally familiar with the method of preparing records by the hospital prior to her employment. However, there had been no change in the procedures since she became the medical records librarian, and as far as she knew the records of the hospital had always been kept in the regular course of the business. She was familiar with and recognized the handwriting on the exhibits as being that of the doctors named thereon, but she did not recognize the handwriting of the nurses who had made entries.

■ Defendant Vaughn's contention that these hospital records were erroneously admitted because there was no "proper qualification of them" is without merit by reason of the decision of this court en banc in Rossomanno v. Laclede Cab. Co., Mo., 328 S.W.2d 677, a case involving the business records of a doctor. It was there pointed out that if there was merit to the challenge to the admission of the records in that case, which was substantially the same as the challenge in this case, then "a new employee, even a permanent custodian, would be incompetent to qualify for admission in evidence any records ante-dating his employment regardless of how many years he continued to work because he could never acquire the

necessary personal knowledge," and therefore the attendance and testimony would be required of the various persons who cooperated in making the record, the very thing the Business Records as Evidence Law sought to obviate. It is sufficient to say here that the records of a hospital are within the purview of the Business Records as Evidence Law, the records in this case were sufficiently identified within the rule of the Rossomanno case, and the trial court did not abuse its discretion in its determination that there was a satisfactory compliance with the statutory requirements for admission of the business records. See also Allen v. St. Louis Public Service Co., 365 Mo. 677, 285 S.W.2d 663, 55 A.L.R.2d 1022.

Defendant Pendegraft contends that the trial court erred in denying his motions for directed verdicts because "all the evidence in the case shows that plaintiffs, as purchasers of the premises in question, were contributorily negligent as a matter of law in failing to reasonably inspect said premises."

■ Mr. and Mrs. Gathright, apparently to qualify for the "V. A. loan," entered into a written contract with Mr. Pendegraft to purchase the property. It can be assumed that the contract was conditioned on the approval of the loan, but whether there were other conditions is not known because the terms of the contract were not shown. Defendant Pendegraft argues that the "plaintiffs were purchasers of the real estate * * * and as such were owed no duty by defendant [Pendegraft] for a defective condition of the premises." He cites Combow v. Kansas City Ground Investment Co., 358 Mo. 934, 218 S.W.2d 539, 8 A.L.R.2d 213, which, generally speaking so holds. This argument is directed to the proposition that there was no breach of duty by Mr. Pendegraft, but the contention is that plaintiffs were negligent because they breached their duty to inspect the gas system in the house. There had been no transfer of title to the property, and there had been no transfer of

possession to Mr. and Mrs. Gathright. It is true that certain steps preparatory to the transfer of title and possession had been taken in that Mr. Gathright had requested the City of Fulton to furnish electricity and water to the house and had requested the City to install the gas meter. It is admitted that Mr. and Mrs. Gathright did not make or cause to be made an inspection of the gas system in the house. While they had certain equitable rights in the property, we find no duty on Mr. and Mrs. Gathright, under the circumstances here, to have inspected the gas system prior to the explosion and fire, and therefore, they could not have been contributorily negligent as a matter of law in failing to do so.

Defendants Pendegraft and the City of Fulton challenge plaintiffs' instructions submitting negligence on their part. We shall consider first a challenge common to all verdict directing instructions given at the request of the plaintiffs, but shall set forth only Instruction 10 submitting on behalf of Mrs. Gathright the negligence of the City of Fulton.

"Your verdict must be for plaintiff Rita Gathright and against defendant the City of Fulton if you believe:

"First, defendant City of Fulton failed to odorize the natural gas which it supplied sufficiently that a person with a normal sense of smell could detect the presence of the gas; and

"Second, defendant City of Fulton was thereby negligent; and

"Third, such negligence directly combined with the acts of defendants Pendegraft and Vaughn to cause damage to plaintiff Rita Gathright."

It is contended by defendants Pendegraft and the City of Fulton that the instructions applicable to them failed to require the jury to find that the source of the explosion and fire was natural gas, and it is further asserted that this was a material and highly controverted fact issue essential to recovery by plaintiffs. That the source of the ex-

plosion was natural gas was denied generally by the pleadings. However, no evidence was offered to show that the explosion and fire resulted from any source other than natural gas. The evidence of the City of Fulton was that the meter, when installed, showed a reading of zero, and after the explosion the reading was still zero. There was evidence that these readings indicated only that something less than 100 cubic feet of gas passed through the meter. In addition, there was evidence from which it could be argued that the maximum amount of gas which could have escaped could not result in an explosive mixture.

In a previous opinion handed down in this case we stated that notwithstanding the pleaded general denials, there was in fact no issue that an explosion occurred, and that we were of the opinion from a consideration of all the evidence and the circumstances that it borders on technicality beyond reason to say that at the time the case was submitted to the jury there was any real issue whether the explosion resulted from an accumulation of natural gas. In a motion for rehearing defendants City of Fulton and Pendegraft challenged this conclusion, and they filed a supplemental transcript containing the argument to the jury by counsel for the City of Fulton in which he argued that plaintiffs had not established that the explosion resulted from natural gas, and also that they had not established that the gas furnished by it was not odorized. Because of the contentions made in the motions for rehearing, we have rewritten that portion of this opinion dealing with the challenge of defendants City of Fulton and Pendegraft to plaintiffs' verdict directing instructions.

There are no verdict directing instructions in MAI applicable to this case. Civil Rule 70.01 provides that when "there is no applicable MAI so that an instruction not in MAI must be given, then * * * such instructions shall be simple, brief, impartial, free from argument, and shall

not submit to the jury or require findings of detailed evidentiary facts." The verdict directing instructions submitted by plaintiffs followed the plan and form of submission provided for and authorized by MAI. For example, in submitting a single negligent act MAI 17.01 provides that the verdict should be for plaintiff if the jury believe, "First, defendant violated the traffic signal, and Second, defendant was thereby negligent, and Third, as a direct result of such negligence the plaintiff sustained damage." The fact of a collision between the automobiles is not hypothesized even though by reason of a general denial the matter may be said to be in issue. Defendants City of Fulton and Pendegraft point to page XXXI of MAI and the comment there made that approved forms of instructions are to be modified to include disputed essential issues not hypothesized.

 In this case Instruction 10, which submitted negligence of the City of Fulton in plaintiff Rita Gathright's case, required the jury to believe and find that the City failed to odorize properly the natural gas, that such failure was negligence, and that such negligence caused damage to plaintiff. There was no contention, nor was there any evidence from which it could have been found, that Rita Gathright sustained any injury and resulting damage except as the result of an explosion. In order for the jury to find that the injuries she received were the direct result of the negligent failure of the City to odorize the gas, it necessarily had to find that there was an explosion of unodorized natural gas. It is the rule that an essential element of a plaintiff's submission may not be omitted from a verdict directing instruction where the issue is not conceded. Vasquez v. Village Center, Inc., Mo., 362 S.W.2d 588. However, assuming that it can reasonably be said that in the circumstances of this case there was in fact a real issue whether the explosion which injured Rita Gathright resulted from an accumlation of natural gas, an instruction is not erroneous when a finding of the es-

sential element is necessarily implied from the other findings which are required. Heppner v. Atchison, Topeka and Santa Fe Railway Co., Mo., 297 S.W.2d 497; Schonlau v. Terminal R. Ass'n of St. Louis, 357 Mo. 1108, 212 S.W.2d 420. Counsel recognized that the plaintiffs' verdict instructions necessarily implied the requirement that the jury believe that the explosion resulted from natural gas, because, as demonstrated by the supplemental transcript, this was one of the principle issues argued to the jury. For us to hold that a jury could possibly have believed that it was authorized to return a verdict for plaintiffs without believing and finding that the explosion resulted from an accumulation of natural gas would require the conclusion that they lacked the intelligence of reasonable men. This we cannot do. We conclude that the instructions were not prejudicially erroneous for the asserted reason.

 The City of Fulton also contends that by providing in the third paragraph of Instructions 10 and 18 that "such negligence directly combined with the acts of defendants Pendegraft and Vaughn to cause damage" to Mrs. Gathright, the instructions "improperly assumed acts of defendants Pendegraft and Vaughn without specifying them and without limiting them to acts submitted in other instructions and without indicating whether such acts were negligent acts or nonnegligent acts." Defendant Pendegraft makes the same contention as to Instructions 5 and 14 and also as to Instructions 7 and 16. It is admitted that the language "obviously was taken from MAI 19.01." The language used in the instructions is the approved MAI method of submitting in a verdict directing instruction that the negligent acts of one defendant combined with the acts of one or more joint tort-feasors, and defendants City of Fulton and Pendegraft do not present any convincing reason why the provisions of MAI should not have been followed in this respect.

The City of Fulton also asserts that the trial court abused its discretion in refusing its requested cautionary instruction as follows: "The sole and only issue before you with respect to any negligence of Defendant, City of Fulton, is the issue of odorization as submitted in Instructions Number [10] and [18]." The City cites and relies on Thompson v. Economy Hydro Gas Co. 363, Mo. 1115, 257 S.W.2d 669. There the giving of a similar instruction was held to be within the trial court's discretion, not prejudicial to the plaintiff, and that it did not result in reversible error. For the reasons that to give such a cautionary instruction is discretionary, the refusal of such an instruction also is discretionary. The City states that the *"allegations* [in plaintiffs' petitions] of negligence against each defendant were multiple" including the City of Fulton, and it then argues that since there was only one ground of negligence on the part of the City submitted, this was confusing to the jury and the requested instruction was required. There is no attempt to show that the jury knew of the multiple allegations of negligence as to the City of Fulton, and ordinarily it would have no occasion to know of any alleged negligence other than that submitted in the instructions. The submission against the City was singular, easily understood, and the negligence was clearly limited to a failure to odorize properly the gas. We are of the opinion that to give the requested instruction would not have been error, but we also are of the opinion that to refuse it under the circumstances was not an abuse of discretion, and therefore was not prejudicial.

Instruction 5, the verdict directing instruction on behalf of Mrs. Gathright submitting the negligence of defendant Pendegraft, was as follows:

"Your verdict must be for plaintiff Rita Gathright and against defendant Pendegraft if you believe:

"First, defendant Pendegraft either: turned on the gas and caused it to flow into the pipes of the house without first inspecting, or causing to be inspected, or determining whether there had been an inspection of said pipes so as to determine whether it was safe to start the flow of gas into them, or caused and permitted temporary, unsafe or makeshift conditions of piping to exist in the house in violation of Ordinance 901 of the City of Fulton, which provides that temporary or unsafe repairs, connections, or makeshift conditions of piping will not be approved for service, or failed to test and inspect, or cause to be tested and inspected, or to determine whether there had been a test and inspection of, the gas piping in the house in violation of Ordinance 901 of the City of Fulton, which required an inspection and test on each job of gas piping; that the piping will be subjected to an air pressure of at least ten inches of mercury column, which it must maintain twenty minutes without any leakage; and that all connections shall be tested with soap suds, and

"Second, defendant Pendegraft's conduct, in any one or more of the respects submitted in paragraph first, was negligent; and

"Third, such negligence directly combined with the acts of defendants Vaughn and the City of Fulton to cause damage to plaintiff Rita Gathright."

Instruction 14 was substantially the same and submitted the same negligence of defendant Pendegraft in J. T. Gathright's case.

Defendant Pendegraft contends that these instructions submitted his negligence in violating Ordinance No. 901 of the City of Fulton without requiring the jury to find that he was an "owner" to whom said ordinance was applicable and without defining "owner," both being controverted and material facts essential to plaintiffs' cases. Defendant Pendegraft argues that since Mr. and Mrs. Gathright had entered into a contract to purchase the property they had become the real owners of the property, citing Hernandez v. Prieto, 349 Mo. 658,

162 S.W.2d 829. That case, however, pertains to the equitable rights between two persons who contract to purchase property from another and is not particularly applicable to the facts of this case.

■ The provisions of Ordinance No. 901 referred to in Instructions 5 and 14 are in Sections 5 and 8 of Article IV and in Article V. In Section 5 the term "owner" is not used, and in Section 8 the reference is to "owner or fitter." Article V imposes "penalties" on "persons" who "violate" the ordinance. We note that Section 2 of Article IV provides that "a property owner" may do his own work of installing "gas service lines, house piping, and fittings," provided the work is done subject to the rules and regulations prescribed in the ordinance. If the property owner has the work done by others it is to be done by "duly qualified and licensed plumbers or gas fitters." We think there is no question but that at the time the gas system was installed, defendant Pendegraft was a "property owner" and a person to whom Ordinance 901 was applicable.

■ The construction of an ordinance is a question of law for the court. Hogan v. Fleming, 317 Mo. 524, 297 S.W. 404; 88 C.J.S. Trial § 295b. Therefore, the issue of whether defendant Pendegraft was a person to whom the ordinance applied was for the court and not the jury. The court made this determination, and defendant Pendegraft does not contend that its determination was erroneous, but only that the matter should have been submitted to the jury. The submission by Instructions 5 and 14 were in accord with the principles of MAI. For example, MAI 17.18 submitting negligence for the violation of a statute or ordinance pertaining to speed limit does not submit to the jury the issue of whether the defendant is subject to the ordinance.

Defendant Pendegraft next asserts that the alternative submission in paragraph First of Instructions 5 and 14 that he "turned on the gas and caused it to flow into the pipes" was not supported by evidence. Certain facts should be reviewed.

On Sunday afternoon May 7, 1961, the gas was not turned on at the meter. Mr. Pendegraft testified that he asked Mr. Thompson to repair a broken water pipe, *to turn on the gas,* and to light the water heater, and that pursuant to his request Mr. Thompson did turn on the gas. Mr. Thompson testified that he did not turn on the gas, but that after he had repaired the water pipe he found that the gas had been turned on. Mr. Pendegraft testified that he personally did not turn on the gas. No one other than Mr. Pendegraft and Mr. Thompson was around the premises at the time. We have the situation where the gas was turned off, a short time later it was turned on, and the only persons who could have turned it on each denied that he did so.

■ Adoption of MAI has not changed the requirement that an issue submitted in an instruction must be supported by substantial evidence from which the jury reasonably could find such issue. Brassfield v. Sears, Mo., 421 S.W.2d 321. In this case in Instructions 5 and 14 plaintiffs submitted that "defendant Pendegraft * * * turned on the gas * * *." In Instructions 7 and 16 they submitted that Mr. Thompson was an employee of defendant Pendegraft and that in the scope of his agency "E O. Thompson turned on the gas * * *." There is no objection to the inconsistency of these two submissions. Although Mr. Pendegraft testified that he did not turn on the gas, and there was no affirmative evidence that he did (except that it had to have been turned on by either Mr. Pendegraft or Mr. Thompson), he testified unequivocally and positively that he requested Mr. Thompson to turn on the gas and that pursuant to that request Mr. Thompson did so. The legal effect of Mr. Pendegraft turning on the gas and Mr. Thompson turning it on at the specific request of Mr. Pendegraft is the same. In these circumstances, and in view of Mr. Pendegraft's unequivocal testimony that he caused the gas to be turned on, he

cannot now complain that there was no substantial evidence that he "turned on the gas."

Defendant Pendegraft next challenges Instructions 5 and 14 because they "erroneously placed on [him] the common law duty to inspect, cause to be inspected, or determine if inspection had been made of the gas pipes in the house." He argues that such a duty did not rest on him as a vendor but was on plaintiffs as purchasers, a matter previously ruled, and after conceding, at least inferentially, that such duty rested on him as a general contractor, he argues that plaintiffs "neither alleged, sought to prove, nor submitted against defendant Pendegraft as a general contractor."

■ Instructions 5 and 14 submitted in the disjunctive as negligence the failure of defendant Pendegraft to inspect the gas lines or determine if an inspection of the gas lines had been made before the gas was turned on. This was based on his common law duty as a general contractor. The instructions did not require a finding that defendant was a general contractor, but this was an admitted and uncontradicted fact. Defendant Pendegraft testified that he was a general contractor engaged in the building of houses, and that in such capacity he built the house where the explosion occurred. His status as a general contractor is admitted in his brief. There is nothing to the contrary. It is not error for an instruction, before or after MAI, to assume "an uncontroverted fact" established by the testimony of the adversary. Charles F. Curry and Company v. Hedrick, Mo., 378 S.W.2d 522, 532; Banks v. Koogler, Mo., 291 S.W.2d 883, 891.

Defendant Pendegraft also challenges Instructions 7 and 16 given at the request of plaintiffs. Each instruction submitted that E. O. Thompson was an employee of defendant Pendegraft on May 7, 1961, and while acting within the scope and course of his agency turned on the gas and caused it to flow into the pipes of the house without first inspecting them, or first ascertaining whether or not an inspection had previously been made of them.

Defendant Pendegraft contends that there was not sufficient evidence from which the jury could find that E. O. Thompson was an employee of defendant Pendegraft.

Mr. Thompson was a journeyman plumber but he had no training other than what he had learned on the job. There was no written contract between him and defendant Pendegraft. On Sunday afternoon, May 7, 1961, he was working at his daughter's house. Mr. Pendegraft asked him to do some work for him, and specifically to repair a water pipe which had broken by reason of freezing, to turn on the gas, and to light the hot water heater. Mr. Pendegraft told him what he wanted done and showed him what to do, and according to Mr. Thompson he did the work under the supervision of Mr. Pendegraft. Mr. Thompson used his own tools or those of his regular employer. The amount of compensation for the work was arrived at after the work was completed, and Mr. Pendegraft paid him two dollars.

■ Defendant Pendegraft cites and relies on Benham v. McCoy, Mo., 213 S.W. 2d 914. There the issue was whether the evidence authorized the submission that the plaintiff in that case was an independent contractor rather than an employee. It was held that each case must depend upon its own facts, and no single test considered alone is conclusive of the ultimate test, the right to control. But, it was also held that "If the facts and legitimate inferences to be drawn therefrom are in dispute the issue is one for the jury." See also Lawrence v. Gebhardt, Mo.App., 311 S.W.2d 97. There was sufficient evidence in this case to submit the issue to the jury whether Mr. Thompson was an employee of Mr. Pendegraft acting within the scope of his agency.

Defendant Pendegraft also asserts error resulted in the refusal of three requested

instructions offered to submit the issue of contributory negligence. Requested Instruction DP–A was that "The term 'owner' as used in these instructions includes a person who has entered into a contract for the sale of a house, either as purchaser or seller." Requested Instruction DP–B provided that the verdict must be for all defendants whether or not any of the defendants were negligent if the jury believed that (1) Rita Gathright "was an owner of the house * * * on the 3rd day of May, 1961," and (2) she failed to test or inspect, or cause to be tested and inspected, or determine whether there had been a test and inspection of the gas system in violation of Ordinance 901, and (3) such conduct was negligent, and (4) such negligence directly caused or contributed to cause her damages. Instruction DP–C was the same except it pertained to the contributory negligence of J. T. Gathright.

■ These instructions were requested on the theory that plaintiffs were "owners" of the house on May 3, 1961 (the day Mr. Gathright requested the City to install the meter) within the meaning of Ordinance 901, and for that reason the ordinance imposed on them the duty to inspect or have the gas system inspected. As previously noted they had not then received title or possession of the property. However, the issue is whether they were persons to whom the inspection requirements were applicable. Section 8 of Article IV of the ordinance provides that "The City will require inspection and test on each job of gas piping. * * * Request for inspection or test must be made by the owner or fitter * *." This must be read with Section 2 of Article IV which authorizes an owner to do his own work subject to the rules and regulations or have it done only by "duly qualified and licensed plumbers or gas fitters." The provision in Section 8 that an inspection or test is required "on each job of gas piping" at the request of the "owner," refers to the one who did his own work or had the work done by a plumber or fitter. Under no reasonable construc-

tion could this be held to include a person who had contracted to buy from a builder a completed house, which would include the required inspections. Ordinance 901 did not impose on plaintiffs, as persons who had contracted to buy the house, but who had not constructed or had constructed by another a "job of gas piping," any duty to have the gas system inspected. The instructions were properly refused.

Each of the defendants assign as error a remark of plaintiffs' counsel in closing argument that plaintiff Rita Gathright "was murdered in this house." The background circumstances are material.

Defendant Pendegraft filed a counterclaim against plaintiffs on the basis that they had contracted to buy the house at 1109 Cote Sans Dessein Road, and that after he had at their request rebuilt and repaired it following the explosion and fire they refused to buy it. He alleged that he had subsequently sold the house to someone else, but had sustained damages in the amount of $7,986 for which he prayed judgment. While this counterclaim was pending, Mr. Pendegraft testified on direct examination that he rebuilt the house in about four months time but that plaintiffs refused to buy it. The following then occurred.

"Q. And when they refused to pay the purchase price what did you do?

"A. I tried to sell it, which was very hard to do. Everyone acted like that someone was more or less murdered in the house, you couldn't talk to them about it. So I finally sold it to a guy named Brewer."

No objection was made to this voluntary statement. At the end of defendant Pendegraft's case he voluntarily dismissed his counterclaim. In closing oral argument, counsel for plaintiffs said this:

"I want to leave you with this one further observation and recollection of the evidence. You may remember in Mr. Pendegraft's testimony about after he

rebuilt this house how he was trying to sell the house, and he testified he had had a hard time, that he did have a hard time selling the house because people acted like someone had been murdered in it, and in practical effect I can understand the reaction of people because when you get right down to it as far as practicalities of the situation is concerned, someone was murdered in this house because the woman you see here, Rita Gathright, is not the same Rita Gathright that went into the house on May 8, 1961."

The trial court overruled defendants' objections and denied their request for a mistrial.

◼ Defendants rely on several cases but principally upon Dodd v. Missouri-Kansas-Texas Railroad Company, 353 Mo. 799, 184 S.W.2d 455. There, in a wrongful death case, it was held to be reversible error to argue to the jury that the decedent had been "run into from the rear, stabbed in the back and killed in cold blood." The court commented that there was no evidence that he had been "killed in cold blood" which in common parlance means a willful deliberate, felonious homicide. Walsh v. Terminal R. Ass'n of St. Louis, 353 Mo. 458, 182 S.W.2d 607 and Jackman v. St. Louis and H. Railway Co., Mo.App., 206 S.W. 244, also cited by defendant, pertain to argument accusing a party of gross misconduct without support of the evidence. The present case does not fall with the pattern of those cases. Here there was evidence that "everyone acted like that someone was more or less murdered in the house." Admittedly this was an unresponsive and volunteered statement, but there was no objection to it. The parties are entitled to comment on the evidence in the record, but, as contended by defendants, the comment should have a legitimate bearing on the issues of the case, and counsel is not entitled to make an unfair, misleading, and prejudicial argument on immaterial facts which happen to get into the record. Beer v. Martel, 332 Mo. 53, 55 S.W.2d 482; Amsinger v. Najim, 335 Mo. 528, 73 S.W.2d

214. In this case, the statement by plaintiffs' counsel first called the attention of the jury to the testimony of Mr. Pendegraft as to why he had a hard time selling the house. There was no accusation that Mrs. Gathright had been killed, and the jury was aware that she had not because she was sitting in the presence of the jury, and counsel for plaintiff referred to "the woman you see here." For this reason we do not agree with defendants' contention that the jury would consider that defendants were charged with a capital offense. We consider the argument that because of the injuries sustained in the explosion the person sitting in the courtroom was "not the Rita Gathright [who] went into the house on May 8, 1961," to have been justified by the record and to constitute permissible argument. The only objectionable feature is that counsel said, in effect, that because of the injuries received and the effect of them, the Mrs. Gathright who entered the house was "murdered," and the Mrs. Gathright who was in the courtroom was, in effect, a different person.

◼ This argument was extreme, and the choice of the word was ill advised. However, every case must stand on its own facts, and the trial court necessarily must have considerable discretion in determining the prejudice, if any, of oral argument. When we consider that the reference was a comment on the evidence, and particularly the fact it necessarily was obvious to the jury that there was no charge of killing but that the term was used as a colloquialism not intended to be literally true, we do not consider that the transgression of counsel requires this court to rule that the trial court, who was in a far better position to determine the effect of comments made in oral argument, abused its discretion at the time of the objections to the argument and again at the time it ruled on defendants' motions for new trial.

◼ Defendant Pendegraft and the City of Fulton assert that various contentions previously considered constituted "cumula-

tive error" creating a highly prejudicial and inflamed atmosphere which denied them a fair trial. We have held the various incidents referred to did not constitute error, and an accumulation of nonerroneous incidents cannot result in error.

The final contention of defendants Pendegraft and the City of Fulton, but not joined in by defendant Vaughn, is that the verdict and judgment for $50,000 in favor of Mrs. Gathright is excessive by $25,000. The verdict and judgment in favor of Mr. Gathright is not challenged on the basis of excessiveness. We must review the evidence relating to the injuries of Mrs. Gathright.

On May 8, 1961, the date of the explosion, Mrs. Gathright was 23 years of age. She was married and had one child. The force of the explosion was such that she was thrown across the room, portions of the ceiling fell on her, the front door of the house was blown off, and bricks on the outside of the walls of the house were blown off. She sustained painful burns over her entire face, part of her neck, both of her hands, and the lower portions of both legs. At the hospital she received injections for pain. The burns were largely second degree with patches of third degree burns on her face, mostly third degree burns on her hands, and on her legs she received second degree burns with areas of third degree burns. Her eyebrows and part of her hair were burned off. The burns covered approximately 12% of her body. She remained in the hospital fourteen days, during which time her bandages had to be changed almost daily, a painful process for which injections for pain were required. While in the hospital Mrs. Gathright could not feed herself, and her face became covered with scabs. In June she returned to the hospital and skin grafts were performed by taking skin from the upper portion of her right leg and grafting it on her hands and lower right leg. This operation was painful and because of her condition the doctors were fearful to give her a general anesthetic. On June 18 she entered the hospital in a coma caused by a liver condition which she had prior to the explosion, and which, in the opinion of her physician, "was aggravated by the injuries and treatment." During the summer of 1961, she was unable to do anything for herself, her hands were bandaged for three months, she had to be fed and could not stand or walk. Her small son was kept by relatives, and Mr. Gathright and relatives did the cooking, washing, and homework until September. At trial, Mrs. Gathright had scars on her face, hands and legs. Her hands are inclined to be stiff and crooked, she cannot straighten them, and she has a loss of strength. She cannot place her hands in moderately hot water or use them in detergents without irritating them. She is self-conscious about her injuries and frequently wears gloves and slacks to conceal them. Makeup does not conceal her facial scars. She has discussed with her doctors the advisability of additional plastic surgery and facial sanding, but the process is expensive and time consuming. Her legs are particularly susceptible to injury and infection, and on one occasion after scraping her leg in a fall it was bandaged for six months. Her recovery from the burns is as complete as possible. She has a 50% loss of use of her left hand and 20% loss of use of her right hand. Nothing further can be done to remedy the condition of her legs, and only surgery and sanding can improve her facial appearance. The scars are permanent.

Although an appellate court may determine, as a matter of law, whether the verdict under review is in excess of the maximum amount which the evidence will support, Sanders v. Illinois Central Railroad Company, 364 Mo. 1010, 270 S.W.2d 731, the assessment of damages is primarily the function of the jury, whose duty it is to award such sum as reasonably will compensate for the injuries sustained. Breland v. Gulf, Mobile and Ohio Railroad Company, Mo., 325 S.W.2d 9. This court has frequently recognized that there is no precise method for determining that amount. Each case must be considered upon its own pe-

culiar facts, Erbes v. Union Electric Company, Mo., 353 S.W.2d 659, 670, and it is most difficult to endeavor to maintain a standard of uniformity of judgments in personal injury cases. Carnes v. Kansas City Southern Railway Co., Mo., 328 S.W.2d 615, 623. We have considered the cases cited in support of a remittitur, but with the exception of Erbes v. Union Electric Company, supra, the facts and the injuries sustained were so unlike those of this case that they afford little comparison. In the Erbes case a judgment for $50,000 was approved after a remittitur.

Mrs. Gathright was a young, attractive person prior to the explosion, as evidenced by the photograph. This court did not see her after the explosion, but the jury did, and it was able to take into account her disfigurement and the probabilities of permanency discernible by visual observation. There is no question but that the burns suffered, and the treatment occasioned thereby, were extremely painful, and that permanent scars on the face, hands and legs resulted, as well as permanent limitation of the use of her hands. The trial court had the issue of excessiveness presented to it in the motion for new trial, and after having the benefit of visual observation of Mrs. Gathright, in addition to hearing her testimony and that of her husband and the medical doctors, it declined to order a remittitur. Upon consideration of all the facts heretofore outlined, and taking into consideration our limitation to appraise accurately the extent of disfigurement, and considering the action of the trial court who had the benefit of visual observation, although the award of damages may appear to be liberal, we cannot say as a matter of law that the amount of the verdict is in excess of the maximum amount the evidence will support.

The judgment is affirmed.

BARRETT, and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

FINCH, P. J., EAGER, J., and JENSEN, Special Judge, concur.

DONNELLY, J., not sitting.